**AMERICAN POSTAL WORKERS UNION, et al.**

v.

**UNITED STATES POSTAL SERVICE.**

**No. H–84–809 Civil.**

United States District Court, D. Connecticut.

Aug. 14, 1984.

On Motion for Reconsideration or Stay Oct. 18, 1984.

Christopher C. Burdett, Stamford, Conn., Robert A. Cantore, Vladeck, Waldman, Elias, Engelhard, New York City, for plaintiffs.

W. Philip Jones, Asst. U.S. Atty., Hartford, Conn., for defendant.

## RULING ON MOTION FOR A PRELIMINARY INJUNCTION

BLUMENFELD, Senior District Judge.

The plaintiffs seek a preliminary injunction restraining the Postal Service from

terminating the employment of Philip N. Danko, pending arbitration of the dispute. The defendant opposes the motion and has moved to dismiss for failure to state a claim. The plaintiffs' motion was heard on August 8, 1984, but no evidence was taken because the defendant conceded that the facts as stated in the plaintiffs' complaint were true.

*Facts*

This dispute began with the decision of the Postal Service to "excess" (*i.e.*, eliminate) fourteen positions at the New London Post Office and transfer a number of those employees to other offices in Connecticut. Danko, who is President of the union local, opposed this action; in particular, he claimed that the loss of these positions caused delayed mail service for customers of the New London Post Office. Danko publicized his opposition by contacting the local newspapers, the Senators from Connecticut, and his local Congressman.

The dispute was brought to a head by a letter that Danko sent to Mystic Color Lab, the largest customer of the New London Post Office. Danko informed Mystic Color Lab that, as a result of the elimination of the fourteen positions, its mail was being delayed. The defendant concluded that this letter constituted conduct prejudicial to the interest of the Postal Service and decided to discharge Danko.

The firing was to have taken effect on July 26, 1984, but Judge Clarie issued a temporary restraining order precluding the firing on July 24, 1984, which I extended for an additional ten days on August 3, 1984. The plaintiffs, Danko and the union representing employees at the New London Post Office, seek a preliminary injunction restraining the discharge until the arbitration of the dispute is completed.

The collective bargaining agreement requires arbitration of this dispute and the parties have commenced the arbitration process.[1] The collective bargaining agreement establishes four steps in the arbitration process, two of which have been completed.

*Discussion*

The plaintiffs have presented several arguments in support of their contention that Danko should not have been fired by the Postal Service. The defendant disputes the merits of all of the plaintiffs' arguments and contends that a preliminary injunction should not issue because the plaintiffs have not established any irreparable harm. The defendant also challenges the court's jurisdiction because primary jurisdiction lies with the NLRB.

■ To obtain a preliminary injunction, the plaintiff must show:

(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the [plaintiff].

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). Danko's financial difficulties resulting from his discharge are not sufficient to establish irreparable injury. *See Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). But the plaintiffs contend that Danko's discharge will have a chilling effect on his and the other employees' exercise of their first amendment rights. The union contends that the chilling effect on its members' first amendment rights is an irreparable injury. To determine whether there will be a chilling effect one must first inquire whether Danko's actions were protected by the first amendment.

*First Amendment*

■ The Postal Service contends that Danko's letter did not address a matter of public concern and thus was not protected speech under the first amendment.[2] From

---

1. The plaintiffs have also filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), which has decided to defer action pending arbitration. *See Collyer Insulated Wire*, 192 N.L.R.B. 837 (1971).

2. Such speech does not fall in the same category as obscenity which is never protected under the first amendment; rather, if the speaker is a public employee, he may be fired for such speech without violating the first amendment.

the other side, the plaintiffs contend that Danko's letter did not address a matter of purely private concern; they contend that the public has a vital interest in the efficient operation of the mails.

> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.

*Connick*, 103 S.Ct. at 1690 (footnote omitted).

In *Connick*, an assistant district attorney distributed to other employees a questionnaire criticizing the internal workings of the district attorney's office, which was held not to be a matter of public concern. *But see Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (speech about a dress code for teachers was a matter of public concern because it affected public support for bond issues). However, one of the questions on the questionnaire did address a matter of public concern: whether public employees were pressured into participating in political campaigns.[3] *Connick*, 103 S.Ct. at 1691. Similarly, in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Court held that a schoolteacher's complaints about the allocation of funds between academic and athletic programs were addressed to a matter of public concern.

▆▆▆ In this case, Danko's letter was about a matter of public concern as well as a purely private dispute. The letter was designed to aid the union in its efforts to convince the Postal Service to reinstate the jobs which had been terminated at the New London Post Office. This dispute over the jobs is a private dispute between the union and the Postal Service, but the effects of this dispute were not a purely private matter. It should be noted that Danko's letter was but one part of a campaign to inform the public of delays in mail deliveries at the New London Post Office. This campaign had received some attention in the local newspapers, which is some evidence that the matter is of public concern.[4] The public has a legitimate and pressing interest in the prompt delivery of the mails. Thus, to the extent that the lost jobs caused a delay of the mails, the private dispute was a matter of public concern.

*Irreparable Harm*

▆▆▆ The loss of first amendment rights for even a short period of time is an irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Furthermore, "a plausible claim of a 'chilling effect' on the exercise of [first amendment rights] meets the irreparable harm requirement." *Maceira v. Pagan*, 649 F.2d 8, 18 (1st Cir.1981); *see also Katz v. McAulay*, 438 F.2d 1058, 1060 n. 3 (2d Cir.1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972); *Chicago Area Military Project v. City of Chicago*, 508 F.2d 921, 926 (7th Cir.), *cert. denied*, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483

---

*Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

**3.** In *Connick*, the Court balanced the extent to which the plaintiff's first amendment rights were infringed against the government's interest in promoting the efficiency of public services:

> The limited First Amendment interest involved here does not require that Connick tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships.

*Id.* at 1694. In this case, the Postal Service does not contend that Danko's continued presence in the New London Post Office will result in the disruption of the office or the destruction of

working relationships. Furthermore, the fact that Danko's speech did not occur at the workplace decreases the likelihood that his continued employment would have an adverse effect on the operation of the Post Office. *Cf. Connick*, 103 S.Ct. at 1693 n. 13.

**4.** Although the person to whom speech is directed is not dispositive, it is a factor to be considered. *Compare Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (speech protected by the first amendment although directed only to the employer) with *Mount Healthy* (fact that communication was broadcast by a radio station was evidence that it was a matter of public concern).

(1975). I conclude that the plaintiffs have shown that the failure to enjoin Danko's discharge would result in a chilling of his and the other employees' exercise of their first amendment rights; thus the plaintiffs have satisfied the irreparable harm requirement.

### Success on the Merits

 The defendant contends that Danko committed an act of disloyalty and thus his discharge was justified. The plaintiffs argue that the discharge was unlawful because Danko was discharged for exercising his first amendment rights. Although the defendant might argue that it would have discharged Danko even in the absence of the protected conduct, *see Mount Healthy*, 429 U.S. at 281–87, 97 S.Ct. at 573–76, the only instance of disloyalty which the defendant has presented is the letter to Mystic Color Lab. Thus, this case is distinguishable from *Mount Healthy* in which the defendant claimed that the plaintiff had engaged in conduct justifying his discharge completely apart from the conduct which was protected by the first amendment. *Id.* at 281–82, 97 S.Ct. at 573–74. In light of my conclusion, at this stage of the proceedings,[5] that Danko's letter addressed a matter of public concern, the defendant's admission that Danko was discharged for writing that letter[6] is a sufficient basis to find that the plaintiffs have shown a likelihood of success on their claim that Danko's discharge was unlawful.[7]

### Jurisdiction

 The defendant has moved to dismiss this suit because primary jurisdiction lies with the NLRB and therefore this court does not have jurisdiction to issue an injunction. In *Boys Markets, Inc. v. Retail Clerk's Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Supreme Court held that a union may be enjoined from striking over a grievance which the collective bargaining agreement consigned to arbitration. Otherwise, the union could frustrate the arbitration process by using a strike to wring concessions from an employer before the arbitrator could decide the issue. The availability of injunctions has been narrowed in *Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), but an injunction may be issued in aid of arbitration. *See Columbia Local, American Postal Workers Union v. Bolger,* 621 F.2d 615 (4th Cir.1980); *United Steelworkers v. Fort Pitt Steel Casting,* 598 F.2d 1273 (3d Cir.1979). In addition to the traditional requirements for the issuance of a preliminary injunction, the failure to issue an injunction must "deprive the union of an effective remedy in the event the arbitrator decided the grievance in the union's favor." *Local Lodge No. 1266 v. Panoramic Corp.,* 668 F.2d 276, 283 (7th Cir.1981); *Lever Bros. Co. v. Int'l. Chemical Workers,* 554 F.2d 115 (4th Cir.1976).

The inquiry into whether the arbitration would be frustrated by the failure to issue an injunction is closely related to the question of whether the plaintiffs will suffer an irreparable injury. *See Panoramic,* 668

---

**5.** If the trial on the merits were to be held in this court, I would not be bound by the conclusions of law or fact reached in this decision. *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 742 (2d Cir.1953). Similarly, the arbitrator of this dispute will not be bound by my conclusions. *Cf. Teamsters Local 71 v. Akers Motor Lines, Inc.,* 582 F.2d 1336, 1341–42 (4th Cir.1978), *cert. denied,* 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 485 (1979).

**6.** While the defendant has not explicitly equated the first amendment activity of the plaintiff with the contention that the plaintiff was guilty of disloyalty, at this point in the proceedings,

the defendant has offered no other logical basis for its contention.

**7.** Although the plaintiffs need not show a balancing of the hardships tipping decidedly in their favor, the defendant will not suffer an irreparable injury from Danko's continued employment. Where, as here, the defendant will suffer no irreparable harm if the motion is granted and the plaintiff will suffer irreparable harm if the motion is denied, the balance of the hardships tips decidedly in favor of the plaintiffs. *Cf. Hamilton Watch Co.,* 206 F.2d at 743; *Dino DeLaurentiis Cinematografica v. D–150, Inc.* 366 F.2d 373, 375 (2d Cir.1966).

F.2d at 286. The arbitrator would be able to remedy Danko's loss of employment by ordering reinstatement and back pay, but the failure to issue an injunction would frustrate the arbitration process because the arbitrator would be unable to remedy the chilling effect on the employees' exercise of their first amendment rights.

For the foregoing reasons, the defendant's motion to dismiss is denied, and the plaintiffs' motion for a preliminary injunction is granted.

SO ORDERED.

## ON MOTION FOR RECONSIDERATION OR STAY

Defendant in this action has moved for reconsideration or stay of my previous decision to grant a preliminary injunction restraining the discharge of plaintiff Philip Danko pending arbitration of a labor dispute. *American Postal Workers Union v. United States Postal Service*, 593 F.Supp. 403 (1984) (Blumenfeld, J.). The facts are set forth adequately in that decision, and I need not restate them here. In a lengthy, repetitive, and somewhat disorganized brief, defendant advances various arguments to the effect that this court was without jurisdiction to issue an injunction in this case. These arguments are addressed below.

### I. *Statutory Basis for Jurisdiction*

■■■ As an initial matter, 39 U.S.C. § 1208(b) [1] appears to vest jurisdiction in this court. Defendant argues, however, that the body of case law applicable to section 1208(b) precludes the exercise of jurisdiction. The parties agree that the law developed under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, applies by analogy. *See National Ass'n of Letter Carriers v. Sombrotto*, 449 F.2d 915, 918–19 (2d Cir.1971). It is equally well established that in resolving issues under section 301, a district court may apply the case law developed under the Railway Labor Act, 45 U.S.C. § 151 *et seq. Boys Markets v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

### II. *Exhaustion of Contractual Remedies*

■■■ Defendant contends that the plaintiffs may not seek relief in federal court until they have complied with contractual arbitration procedures to the final step. In effect, defendant's position is that while a court may enforce an arbitration award, a court has no power to maintain the status quo pending the results of arbitration. However, neither the case law nor the Congressionally-established policy favoring arbitration as the means of resolving labor disputes requires this result.

*Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), cited by defendant in support of its contention, is inapposite. In *Republic*, a discharged employee who had made no effort to utilize contractual grievance/arbitration procedures brought suit in state court to recover severance pay which he alleged was owed him under the terms of the contract. On appeal from a state court judgment in favor of the employee, the Supreme Court held that federal policy prohibits an individual from electing "to completely sidestep available grievance procedures in favor of a lawsuit." *Id.* at 653, 85 S.Ct. at 616.

In contrast to the situation in *Republic Steel*, the plaintiff in the instant case is actively pursuing contractual remedies. But in a classic plea for equitable relief, he alleges that he will suffer irreparable injury if the status quo is not maintained during the possibly lengthy grievance/arbitration process. Such an action has repeatedly been held to be within the jurisdiction of the district court. *E.g., Local 553, Transport Workers Union v. Eastern Air Lines*,

---

1. The statute provides:

 Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy.

695 F.2d 668 (2d Cir.1982); *Columbia Local, American Postal Workers Union v. Bolger,* 621 F.2d 615 (4th Cir.1980); *Lever Brothers Co. v. International Chemical Workers Union Local 217,* 554 F.2d 115 (4th Cir.1976); *Hoh v. Pepsico, Inc.,* 491 F.2d 556, 560 (2d Cir.1974); *Teamsters Local Union No. 764 v. Branch Motor Exp. Co.,* 463 F.Supp. 282 (D.Pa.1978).

*Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), is not to the contrary. In *Buffalo Forge,* the Supreme Court held that section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, prohibits an injunction against a sympathy strike which both employer and union agreed was itself over a *non-arbitrable* issue. 428 U.S. at 407–08, 96 S.Ct. at 3147–48. The Court went on to say that although the parties in *Buffalo Forge could* arbitrate the issue of whether the sympathy strike violated the contract's express no-strike clause, an injunction against the strike would violate section 4(a) of the Norris-LaGuardia Act's express prohibition against injunctions prohibiting any person from "[c]easing or refusing to perform any work or to remain in any relation of employment." Behind this holding lay the Congressional policy decision that courts should not predetermine factual and contract interpretation issues which the parties have agreed to place in the province of the arbitrator, as well as the Court's recognition that "[i]njunctions against strikes, even temporary injunctions, very often permanently settle the issue." 428 U.S. at 412, 98 S.Ct. at 3149.

*Buffalo Forge* does not control the instant case. There is no strike here. The dispute is over an arbitrable issue. The preliminary injunction does not settle the dispute, nor does it predetermine either factual issues or the interpretation of the contract. The Norris-LaGuardia Act does not by its policy or its terms forbid an injunction, and an injunction here furthers, rather than derogates, federal policy in favor of arbitration as a means of resolving labor disputes. *Cf. Boys Markets, supra,* 398 U.S. at 249–53, 90 S.Ct. at 1591–94. The injunction merely preserves the present relationship between the parties in recognition of the fact that, should plaintiff Danko prevail in the grievance/arbitration process, the arbitrator's award of reinstatement and back pay could not remedy the damage done to plaintiffs by chilling the exercise of their first amendment rights. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Sheehan v. Purolator Courier,* 676 F.2d 877, 885 (2d Cir.1981).

### III. *Preemption*

 Defendant next contends that this court is without jurisdiction to issue an injunction in this case because the question whether the Postal Service violated Danko's rights under sections 7 and 8 of the NLRA is within the exclusive jurisdiction of the NLRB. The argument is a curious one, since plaintiffs have not sought to litigate Danko's section 7 and 8 rights in this forum. In addition to this action, plaintiffs have filed an unfair labor practice charge with the NLRB, upon which the Board has indicated no action will be taken until the arbitrator has rendered a decision. Plaintiffs do not ask this court to interfere with the NLRB's jurisdiction by determining the merits of the unfair labor practice charge, but rather to preserve the status quo pending the arbitrator's decision. The law does not preclude the court from doing so.

In *Carey v. Westinghouse Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), the Supreme Court held that the existence of an unfair labor practice remedy before the Board did not bar a union from seeking a court order compelling arbitration. *See also Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) (suit for damages not barred by existence of NLRB remedy). At least since then, it has been beyond dispute that the NLRB and the District Court have concurrent jurisdiction over suits to enforce labor contracts, even where the conduct involved might well be an unfair labor practice. *Hines v. Anchor Motor Freight,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47

L.Ed.2d 231 (1976); *Pari Mutuel Clerks Union of La. v. Fair Grounds Corp.,* 703 F.2d 913, 917–18 (5th Cir.1983).

Defendant suggests, citing *Eastex, Inc. v. NLRB,* 437 U.S. 556, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978) and *NLRB v. International Brotherhood of Electrical Workers,* 346 U.S. 464, 74 S.Ct. 172, 98 L.Ed. 195 (1953), that the NLRB would not find an unfair labor practice on the facts of this case.[2] That argument does not go to this court's jurisdiction to issue an injunction pending arbitration, but rather to the merits of the dispute between the parties. The merits are for the arbitrator, in the first instance, to decide. I have concluded only that plaintiffs' claims of irreparable injury to their first amendment rights are sufficiently strong to require an injunction pending a merits decision.

It is not, however, the *jurisdiction* of the court which is premised on the constitutional claim. While in the absence of such a claim a court might properly choose, as a *discretionary* matter, to refrain from issuing an injunction, jurisdiction here is based on statute. The constitutional claim goes to the existence of irreparable injury, a prerequisite for equitable relief.

In sum, I conclude that I am not required by law to defer to the NLRB in this matter. The court shares jurisdiction with the Board. In light of the Board's decision to defer to the arbitrator, and in the circumstances of this case, it was no invasion of the Board's authority to issue the injunction in this case.

## IV. *The Statutory Remedial Scheme*

In a final assault on the jurisdiction of the court, defendant argues that under *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), and *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the existence of a statutory remedial scheme precludes the implication of a remedy under the Constitution. These cases are not on point, because this

is not a *Bivens* action. Plaintiffs here seek the intervention of this court not to award damages for a constitutional violation, nor to bypass the avenues of relief established by Congress and the collective bargaining agreement. Rather, they seek temporary injunctive relief to preserve their constitutional rights while they pursue remedies under the very statutory and contractual scheme invoked by defendant. In these circumstances, the discussion of implied constitutional damage remedies is wide of the mark.

The legal issue in *Bush v. Lucas* was quite different from the issue in the case at bar. Bush, an employee of the National Aeronautics and Space Administration's Marshall Space Flight Center, was demoted for making public comments critical of the Center. Through the Civil Service appeals process, he sought and was eventually awarded both reinstatement and back pay. Simultaneously, he filed an action seeking to recover damages for alleged violation of his first amendment rights. The issue presented to the Supreme Court was whether, in light of the elaborate remedial system provided by Congress, the Court should imply a non-statutory *damages remedy* against the supervisor who demoted Mr. Bush. The Court held in the negative, emphasizing that "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the Civil Service." 462 U.S. at ——, 103 S.Ct. at 2417.

In the instant case, however, plaintiff does not seek an implied damages remedy. Congress has already provided a statutory basis for the jurisdiction of the court and no "new species of litigation" is contemplated. Moreover, plaintiff occupies a position of some importance—*i.e.,* President of his union local—in the system of collective bargaining which Congress has sought through the labor laws to encourage and protect, and plaintiff alleges not only a

2. *Letter Carriers v. Austin,* 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974), also relied on by defendant, holds only that speech protected under federal labor laws cannot be the subject of a state court libel judgment.

violation of his own first amendment rights, but also a chilling effect on the rights of the members of his local. *See Sheehan v. Purolator Courier, supra.*[3] Nothing in *Bush v. Lucas* addresses this situation or requires a court to forbear from exercising its traditional power to fashion an equitable remedy.

## V. *Additional Issues*

Defendant raises several additional arguments, going to issues other than the jurisdiction of the court.

First, defendant continues to insist that under *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), Danko's speech was not protected by the first amendment. In my previous decision in this matter, I made plain my view that under these circumstances, the letter which Danko was fired for signing addressed a matter of sufficiently public concern to bring Danko under the amendment's protection. In *Connick,* the Court stated that its holding was a limited one:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal in-

terest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

461 U.S. at 147, 103 S.Ct. at 1690. In my view, both the content of Danko's statements and the circumstances under which they were made take them outside the scope of the holding in *Connick.*[4]

Second, defendant argues that plaintiffs have failed to demonstrate irreparable injury, since if Danko should prevail in arbitration he will receive reinstatement and back pay. However, it is clear that such an award will not remedy the damage done to the first amendment rights of Danko and the members of his union local. This is the type of case to which the court in *Lever Brothers* referred when it stated that an injunction could issue "where it is necessary to prevent conduct by the party enjoined from rendering the arbitral process a hollow formality ... [since] ... the arbitral award when rendered could not return the parties substantially to the status quo ante." 554 F.2d at 123. The Supreme

---

**3.** *Cf. Holt v. Continental Group, Inc.,* 708 F.2d 87 (2d Cir.1983) (In Title VII case, court in determining whether irreparable injury requirement for preliminary injunction has been met should consider risk that other employees may be chilled in the exercise of their rights by permitting plaintiff's discharge pending the outcome of state administrative proceedings.)

**4.** The *Connick* decision is discussed in *Developments in the Law—Public Employment,* 97 Harv. L.Rev. 1611 (1984), where the authors state:

> The public has a substantial interest in the robust and informed discussion of governmental affairs. *Pickering* [*v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ] recognized that public employees, by virtue of their expertise and experience, are often among the citizens who are best informed about the workings of government and that their opinions are thus especially valuable to the public. Although the Court in *Connick* found that *Pickering's* protection extends only to employee speech regarding "matters of public concern," courts should be wary of deciding that informed discussion of government's internal operations is of no concern to the public.

> In particular, courts should not automatically regard labor grievances over office policy to be purely personal matters. Grievances relating to compensation levels and the problems of discipline and morale within public agencies trigger public concern when they threaten the competency or efficiency of public servants. In *Connick,* the Court held that an employee who distributed a questionnaire relating to office morale and practices had expressed a personal concern; yet the Court stressed that its holding rested on the particular facts at issue. *Connick* did not hold that speech relating to labor grievances is always a personal matter; indeed, such a holding would depart from the Court's commitment to case-by-case balancing. Rather, the Court held only that the plaintiff's *particular* grievances were personal. In the short time since *Connick* was decided, two lower federal courts have found, based on the particular facts before them, that speech relating to labor grievances addressed matters of public concern.

> *Id.* at 1768–69 (footnotes omitted).

Court has held, moreover, that harm to first amendment rights satisfies the irreparable injury requirement for equitable relief. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (opinion of Brennan, J.).

Defendant also contends that the local union has no standing to sue, and impliedly argues that this court abused its discretion when it considered the harm that would be done to members of the local if Danko's discharge were allowed to stand pending arbitration.

 It is clear, however, that the statute does not require a party to be a signatory to the contract in order to bring suit. *Santos v. Dist. Council of New York City,* 547 F.2d 197, 200 n. 3 (2d Cir.1977). *Cf. Columbia Local, supra.* Since the main requirement for standing under Article III is "injury in fact," *see Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), and there is no question that the union may assert its members' rights, *see NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), I find the standing contention to be without merit.

 Finally, defendant contends that the court has improperly balanced the hardships in this case, since the public interest will suffer if defendant must retain this miscreant on its payroll. But defendant has never alleged that plaintiff Danko performs his work in less than adequate fashion. However, defendant now alleges, by affidavit of Francis Boughan, Director of Employee and Labor Relations for the Connecticut Valley District of the United States Postal Service, that the injunction is harmful to United States Postal Service efficiency, because it undermines management authority to discipline employees for cause.

The existence of "cause" for Danko's discharge is of course an issue to be adjudi-cated before the arbitrator. Should he or she determine that cause existed, Danko will be discharged, and management authority will be vindicated. The issue, then, is whether the public interest suffers from the fact that Danko must be maintained in work status until a decision is rendered. This question is complicated by the presence of the first amendment issues in the case. I find that the loss of face which management may incur, not from Danko's speech itself but simply from the inability to discharge him pending resolution of his grievance, is insufficient to outweigh the damage which would be done to plaintiffs' first amendment rights if Danko were discharged pending arbitration, even if the discharge were subsequently reversed.

*Conclusion*

I reiterate what I said in my previous decision in this matter: "If the trial on the merits were held in this court, I would not be bound by the conclusion of law or fact reached in this decision." The purpose of this injunction is not to prejudge the case or to influence the arbitrator. It is merely to preserve the status quo until the arbitrator decides the issues raised by Danko's grievance. Should the matter come before me once again after that event, different considerations might apply to a determination of the merits. At this stage, however, defendant has not convinced me either that issuance of the injunction was incorrect, or that a stay is warranted.

 The decision granting a preliminary injunction having been reconsidered, for the reasons made clear above the decision is adhered to and a stay is denied.[5]

SO ORDERED.

---

5. It has come to my attention that on October 12, 1984, defendant filed a notice of appeal in this matter. Such notice does not, however, divest this court of jurisdiction to decide the instant motion. Although defendant styled its motion for reconsideration as a motion under Fed.R.Civ.P. 60, defendant specified no proper Rule 60 grounds for the motion. I have treated the motion as one made under Rule 59(e), and the notice of appeal is therefore a nullity under Fed.R.App.P. 4(a)(4). *See* 6A *Moore's Federal Practice* ¶ 59.12[1], p. 59–280 (1984).