**Joseph LYNN, Plaintiff,**

**v.**

**Linda SMITH, et al., Defendants.**

**Civ. No. 84–1032.**

United States District Court,
M.D. Pennsylvania.

Aug. 13, 1985.

Terrence Gallagher and Robert Farrell, Lawrence J. Moran, Scranton, Pa., for plaintiff.

Thomas Blozusiak, Office of Atty. Gen., Allentown, Pa., John G. Knorr, III, Office of Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff filed this action dated August 1, 1984, pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1985(3), requesting injunctive relief and damages for alleged violations of the First and Fourteenth Amendment, as well as a state claim of intentional infliction of emotional distress. It is the plaintiff's claim that the defendants have punished him for filing internal grievances and will continue to do so if they are not restrained. The plaintiff filed an application for a temporary restraining order (TRO) on August 13, 1984, which was granted August 14, 1984, restraining the defendants from suspending Mr. Lynn from his employment. The TRO remains in effect by consent of the parties. The defendants filed a Motion for Summary Judgment dated October 25, 1984 and brief in support thereof dated November 5, 1984. On November 26, 1984, plaintiff filed a brief in opposition to the motion and on December 10, 1984, the defendants filed a reply brief. By Order dated February 11, 1985, the court granted the plaintiff's request for additional time in which to pursue further discovery. The plaintiff filed a supplemental brief in opposition to the motion for summary judgment on April 9, 1985 and the defendants filed their supplemental brief in support of the motion on May 13, 1985. The motion is now ripe for disposition. For the reasons set forth below, the motion for summary judgment will be granted as to all issues except plaintiff's claim of invasion of privacy in his grievance dated June 26, 1984, and the emotional distress claim.

· The parties are all employed by the Bureau of Claim Settlement in the Pennsylvania Department of Public Welfare. In addition, Mr. Lynn is chief shop steward for his union in the Luzerne Area Office of the Department of Public Welfare. Between June of 1981 and August of 1984, Mr. Lynn filed approximately thirty grievances under the contract procedure on behalf of others in the shop and himself. Several of the grievances filed concern themselves with typical employer-employee disputes such as overtime compensation, travel time, reimbursement for expenses, leave requests and disputed disciplinary actions. Others, however, deal with matters such as inter-

fering with union business, discrimination, harassment and invasion of privacy.[1]

On July 26, 1984, Linda Smith, Acting Director of Field Operations, Department of Public Welfare, acting through Theresa Dunbar, Area Executive, Department of Public Welfare, made several changes in Mr. Lynn's work. Ms. Smith changed his headquarters, his supervisor and his work assignment. In addition, Mr. Lynn received a letter dated August 8, 1984 informing him that he would be suspended for three days based upon insubordination.[2] The parties do not dispute that these changes took place, only what the defendants' motivation was as to why they took place. It is the plaintiff's contention that these actions were undertaken to punish him for filing grievances. The defendants deny this.

## I. FIRST AMENDMENT

The plaintiff alleges that Ms. Smith and Ms. Dunbar have punished him for filing grievances in the past and for refusing their request to abstain from filing any grievance in the future. This, he contends, violates his First Amendment right to freedom of speech.

■ The leading Supreme Court case in the First Amendment area is *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). As a general rule, citizens do not relinquish all of their First Amendment rights when they become public employees. *Id.* However, the state "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Id.* at 568, 88 S.Ct. at 1734. Accordingly, courts must "arrive at a balance between the interests of the [employee] . . ., as a citizen, in commenting upon matters of public concern and interest of the State, as an employer, in promoting

1. The following is a summary of plaintiff's grievances supplied to the court with his motion for summary judgment:

12/22/81—Plaintiff grieves a letter of reprimand received by him due to delinquent work assignments and plaintiff's sick leave.

11/24/82—Plaintiff, as a union representative, grieves the travel compensation time and overtime policy.

11/29/82—Plaintiff, as a union representative, grieves the travel compensation time and overtime policy.

12/ 8/82—Plaintiff, as a union representative and on behalf of himself personally, grieves the agents being forced to do secretarial work when they don't have the time and states he has been harassed for filing grievances.

12/ 2/82—Plaintiff, as a union representative, grieves another agent's discipline.

1/11/83—Plaintiff, as a union representative, and on behalf of himself, grieves a memorandum distributed to agents which plaintiff claims discriminates against him for his union duties.

2/27/83—Plaintiff, as a union representative, grieves another agent's invasion of privacy when he was requested information concerning his return to work after a medical leave.

5/26/83—Plaintiff, as a union representative, grieves management's interfering with union business by posting items on the union bulletin board.

7/ 1/83—Plaintiff grieves a discipline letter he received for working on union business during working hours.

7/ 8/83—Plaintiff, as a union representative, grieves a letter of reprimand received by another agent and alleges harassment, invasion of privacy, libel and discrimination.

12/27/83—Plaintiff grieves a reprimand letter received for improperly filing a leave slip.

1/10/84—Plaintiff grieves over a deduction from his pay slip.

1/30/84—Plaintiff grieves a corrective action memo he received regarding his use of the telephone and claims harassment and discrimination and states he was denied legal counsel at a conference in Wilkes Barre.

5/10/84—Plaintiff grieves an incident which occurred at an office conference regarding plaintiff's criminal cases and claims harassment and discrimination.

6/22/84—Plaintiff grieves a memo he received and his failure to receive a mileage reimbursement.

6/26/84—Plaintiff, as a union representative and on behalf of himself, grieves a memo sent to all agents requesting information as to what they do on their personal time.

6/29/84—Plaintiff, as a union representative and on behalf of himself, grieves a memo received regarding compensable travel time.

7/18/84—Plaintiff grieves the denial of the leave he requested and claims discrimination and harassment.

7/19/84—Plaintiff grieves the denial of his requested overtime and/or back wages.

2. The three days suspension has been delayed by the court's Order dated August 14, 1984.

the efficiency of the public services it performs through its employees." *Id.* The Court in *Pickering* explained that as a general rule, a school board may not dismiss an employee for criticizing school policies that are of public interest unless the speech contains knowingly or recklessly false statements, undermines the ability of a teacher to function, or interferes with the operation of the school. *Id.* at 568–72, 88 S.Ct. at 1734–36. *See also McGee v. South Pemiscot School District,* 712 F.2d 339, 342 (8th Cir.1983); *Czurlanis v. Albanese,* 721 F.2d 98, 102 (3d Cir.1983); *Monsanto v. Quinn,* 674 F.2d 990, 993 (3d Cir.1982).

In *Trotman v. Board of Trustees,* 635 F.2d 216, 224–25 (3d Cir.1980), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981), the Court of Appeals reviewed the three step process usually required in examining a public employee's claim of retaliation for engaging in protective activity. *See also Monsanto v. Quinn, supra;* and *Czurlanis v. Albanese, supra.* First, the plaintiff must show that the activity in question was protected. *See Pickering v. Board of Education, supra.* If successful in demonstrating that the activity was protected, the plaintiff must then show that the activity was a substantial or motivating factor in the decision or action taken against the claimant. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Lastly, the defendant has the opportunity to defeat the plaintiff's claim by demonstrating that the same action would have been taken even in the absence of the protected conduct. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 416–17, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. at 287, 97 S.Ct. at 576; *Paschal v. Florida Public Employees Relations Commission,* 666 F.2d 1381, 1384 (11th Cir.), *cert. denied* 457 U.S. 1109, 102 S.Ct. 2911, 73 L.Ed.2d 1319 (1982).

Initially, in determining whether a motion for summary judgment by the defendants is appropriate, we must begin with an inquiry of whether Mr. Lynn's oral or written speech was protected. To determine that issue, we must first ascertain whether the speech dealt with a matter of public concern and then balance the interests of the state, as an employer, against the interests of the employee, as a citizen. In *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1982), the Supreme Court held that where public employee's activity "cannot be fairly characterized as constituting speech on a matter of public concern," it is unnecessary for the court to scrutinize the reasons for the plaintiff's discharge or the disciplinary action. *Connick* involved a former assistant district attorney unhappy about a transfer. She contended she was dismissed for compiling and distributing a questionnaire to her co-workers concerning office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors and whether employees felt pressure to work in political campaigns. With the exception of the last issue, the Court held the questions posed by the plaintiff did not fall within the realm of matters of public concern. 461 U.S. at 148, 103 S.Ct. at 1690. The Court explained, "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* Accordingly, the Court in *Connick* made an essential distinction between speech by a public employee "as a citizen upon matters of public concern" and speech by an employee "upon matters of only personal interest." *Id.* at 147, 103 S.Ct. at 1690. Only when an employee speaks upon a matter of public concern is a federal court the appropriate forum "in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given state-

ment, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. at 1690. The *Connick* Court further explained:

[Plaintiff, here,] did not seek to inform the public that the district attorney's office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases. Nor did [she] seek to bring to light actual or potential wrongdoing or breach of public trust on the part of the [district attorney] and others.... The questions reflect one employee's dissatisfaction with the transfer and an attempt to turn that displeasure into a cause celebre.

461 U.S. at 148, 103 S.Ct. at 1690–91.

Unlike *Connick,* the plaintiff in *Czurlanis,* alleging he was suspended in retaliation for making a speech at a county board meeting, was found to have a protected First Amendment right. 721 F.2d at 107. Czurlanis, a senior mechanic at the Westfield Garage, addressed the board concerning precisely the questions which the court in *Connick* noted were not the subject of plaintiff's speech there, *i.e.,* whether county officials in the Division of Motor Vehicles were discharging their governmental responsibilities. *Id.* at 104. He sought to bring to light actual or potential wrongdoings or breach of public trust on the part of these officials. Czurlanis spoke as a concerned citizen and taxpayer and not as an aggrieved employee. The Court of Appeals explained that "[t]he fact that Czurlanis became aware of the matters which he raised at the board meeting through his employment with the county does not make these matters any less public concern." *Id.* Therefore, they determined the speech in question approximated that in *Pickering.*

The Ninth Circuit Court of Appeals in *McKinley v. City of Eloy,* 705 F.2d 1110 (9th Cir.1983), distinguished matters of public concern from individual employee disputes in determining the degree of First Amendment protection to which a particular activity is entitled.

Speech by public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies. *See Connick.* On the other hand, speech that concerns issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government merits the highest degree of first amendment protection.

*Id.* (footnote omitted). The court in *McKinley* found the speech involved clearly a matter of public concern. The plaintiff's speech dealt with the rate of compensation for members of the police force and, generally, with the working relationship between the police union and elected city officials. The Ninth Circuit explained:

First, compensation levels undoubtedly affect the ability of the city to attract and retain qualified police personnel, and the competency of the police force is surely a matter of great public concern. Second, the interrelationships between city management and its employees is closely connected with 'discipline and morale in the workplace'—factors that 'are related to an agency's efficient performance of its duties.' *Connick,* [461] U.S. at [148], 103 S.Ct. at 1691. *See also id.* at [160] n. 2, 103 S.Ct. at 1697 n. 2 (Brennan, J. dissenting). Third, the way in which an elected official or his appointed surrogates deal with diverse and sometimes opposing viewpoints from within government is an important attribute of public service about which the members of society are entitled to know. Finally, plaintiff's speech was specifically and purposefully directed to the public both through city council meetings and a television interview.

*Id.* at 1114–15.

In another case involving a police officer, the court determined the officer's speech did not involve matters of public concern. *Lehpamer v. Troyer,* 601 F.Supp. 1466 (N.D.Ill.1985). In *Lehpamer,* the plaintiff alleged, *inter alia,* the department retaliat-

ed against him for comments made on personnel decisions. The court found that "plaintiff's questioning of defendant's personnel policy does not involve matters of public concern merely because public monies and government efficiency are involved.... The Court's finding is bolstered by the fact that plaintiff's complaints would not enrich the public's store of appropriate knowledge regarding the operation of the police department as it affects the public." *Id.* at 1469 (citation omitted). *See also Murray v. Gardner,* 741 F.2d 434, 438 (D.C.Cir.1984) *cert. denied* — U.S. ——, 105 S.Ct. 1748, 84 L.Ed.2d 813 (where the court held the plaintiff, FBI special agent's remarks about the method for determining layoffs and for alleging he had been coerced into keeping quiet about the matter, were not matters of general public concern or matters which would "enrich the public's store of appropriate knowledge on the operation of the FBI", but were rather "an example of the quintessential employee's beef").

■■■ In the case *sub judice,* the court must examine the plaintiff's allegedly protected conduct to determine whether any of it is protected as defined by the Court in *Connick.* Those grievances which relate to travel time, overtime, leave requests, and the like, are clearly not matters of public concern but are of a personal employer-employee nature and not protected by the First Amendment. There are other grievances which the plaintiff would like the court to consider matters of public concern but which are also merely employee-employer disputes. For example, the plaintiff claims, another agent's right to privacy was violated in the February 27, 1983 grievance because the defendants requested his "prognosis." The plaintiff contends that the defendants are only entitled to the employee's "diagnosis" and that the request for the prognosis was unconstitutional. This claim clearly is not a matter of public concern but is a private employer-employee dispute over semantics. Another such example appears in the January 30, 1984 grievance where the plaintiff alleges he received a reprimand letter regarding

his use of the telephone. He also claims that he was denied representation at a conference with the defendants in Wilkes Barre and that these are in violation of the collective bargaining agreement. The enforcement of contracts and collective bargaining agreements may be in the best interests of the public as a whole. However, there are appropriate administrative and legal procedures for pursuing a breach of such agreement and bringing a claim for a violation of the First Amendment is not such a procedure.

The plaintiff also claims discrimination and retaliation by management as a result of his union duties as shop steward—grievance dated January 11, 1983. The Court in *Connick* "expressly did not hold that all speech concerning labor matters was not of public concern.... Rather, it simply properly rejected the effort to attach a broader meaning to statements of purely personal interest." *American Postal Workers Union v. United States Postal Service,* 598 F.Supp. 564, 569 (D.D.C.1985) (a case in which a discharged postal worker and his union brought suit seeking reinstatement and back pay on the grounds that the discharge violated, *inter alia,* the First Amendment rights of the postal worker and his union). In *American Postal Workers Union v. United States Postal Service,* 595 F.Supp. 403 (D.D.C.1984), the court found that the postal workers letter in question concerned both public as well as private matters. The court explained:

The letter was designed to aid the Union in its efforts to convince the Postal Service to reinstate the jobs which had been terminated at the New London Post Office. This dispute over the jobs is a private dispute between the union and the Postal Service, but the effects of this dispute were not a purely private matter. It should be noted that Danko's letter was but one part of a campaign to inform the public of delays in mail deliveries.... The public has a legitimate and pressing interest in the prompt delivery of the mails. Thus, to the extent that the lost jobs caused a delay of the mails,

the private dispute was a matter of public concern.

*Id.* at 407. *See also Murray v. Gardner,* 741 F.2d at 438 (where the court stated: "the role of the whistle blower merits protection; the expressions of personal dissatisfaction by a discontented employee do not"). The dispute raised by the plaintiff here concerning his duties as a shop steward does not have a public component such as that present in *American Postal Workers Union.* The plaintiff's claim that his First Amendment rights were violated *because* he is a shop steward who is attempting to remedy private employee-employer disputes is clearly a circumvention of the Supreme Court's decision in *Connick.* Accordingly, this grievance also does not rise to the level of being protected speech under the First Amendment.

▮ The plaintiff has filed one grievance, however, whose content may be construed as involving a matter of public concern. In the grievance dated June 26, 1984, the plaintiff claims invasion of privacy as a result of an internal memorandum sent to employees apparently requesting information concerning their activities during non-work hours. This claim may fit within *Connick,* although the internal memorandum referred to in the grievance is not a part of the record. The defendants will be directed to forward to the court a copy of the June 20, 1984 memorandum referred to by plaintiff in his June 26, 1984 grievance.

Upon the court's receipt of the June 20, 1984 Memorandum, plaintiff and defendants are directed to address the issue of whether plaintiff's grievance concerning this memorandum is protected speech under *Connick.* The court will hold that portion of defendants' Motion for Summary Judgment in abeyance as it relates to the grievance dated June 26, 1984, pending receipt of the internal memorandum and the briefs by both parties in accordance with this Memorandum.

▮ The plaintiff also appends to his First Amendment claim a theory that he has been injured based upon a type of prior restraint. He claims he is being punished not only for what he has said in the past, but also to prevent him from saying anything similar in the future. The defendants are correct in arguing that the plaintiff has not supported this claim with anything more than blind assertions. Therefore, the court will grant the defendants' Motion for Summary Judgment on the prior restraint theory.

## II. DUE PROCESS

Mr. Lynn next alleges that he has been deprived of "life, liberty or property" without due process of law. In his Brief in Opposition to defendants' Motion for Summary Judgment, the plaintiff contends that even though there is a factual basis for this claim, he "does not further pursue the matter herein." Plaintiff's Opposition Brief at 13, Document No. 32 of the Record. Accordingly, the court will dismiss the due process claim.

## III. EQUAL PROTECTION

▮ The plaintiff next claims that the defendants have deprived him equal protection of the law in that he has been punished for acting as a union whistleblower. The court agrees with the defendants' contention that plaintiff is, in fact, arguing he has been punished not for what he is, but for what he has done, *i.e.,* filing grievances. Therefore, the plaintiff is not a member of any class for equal protection purposes. He merely makes an equal protection argument without any facts to support his claim. The defendant's Motion for Summary Judgment regarding the equal protection claim will, therefore, be granted.

## IV. SECTION 1983

▮ The plaintiff additionally asserts that the defendants have deprived him of rights protected by 42 U.S.C. § 1983. It is clear that § 1983 does not provide any substantive rights, but serves only to ensure that there exists a vehicle for bringing an action for violations of the federal Constitution and laws. The plain-

tiff's Opposition Brief sheds little light in explaining what his Section 1983 claim involves. The brief merely states: "That paragraph does not allege that defendants have violated 42 U.S.C. § 1983 but rather it alleges wrongdoings committed by the defendants as to which the plaintiff can seek recourse or remedy through the court. This paragraph generally includes in the complaint all of the wrongs committed by defendants against plaintiff." Plaintiff's Opposition Brief at 15, *supra*. The court believes all the plaintiff is attempting to do here is assert a catch all provision. Accordingly, since this Section 1983 claim is not in fact a separate claim, it does not merit further consideration and will be dismissed.

## V. SECTION 1985

The plaintiff's final federal claim is that the defendants have violated 42 U.S.C. § 1985(3), providing a cause of action against two or more individuals who conspire "for the purpose of depriving ... any person ... of the equal protection of the laws...." Additionally, § 1985(3) requires an allegation of racial or perhaps some other "class-based" animus. Mr. Lynn asserts that the class he is a member of are whistleblowers or those who represent unions.

■ Regarding his membership in the class of union representatives, the Supreme Court has clearly foreclosed such a § 1985(3) claim. *See United States Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 3358–61, 77 L.Ed.2d 1049 (1983). The court explained:

> [It] cannot construe § 1985(3) to reach conspiracies motivated by economic or commercial animus. Were it otherwise, for example, § 1985(3) could be brought to bear on any act of violence resulting from union efforts to organize an employer or from the employer's efforts to resist it, so long as the victim merely asserted and proved that the conduct involved a conspiracy motivated by an animus in favor of unionization, or against

it, as the case may be.... We think that such a construction of the statute, which is at best only arguable and surely not compelled by either its language of legislative history, should be eschewed and that group actions generally resting on economic motivations should be deemed beyond the reach of § 1985(3).

*Id.* at 3361. Accordingly, the court will grant defendants Motion for Summary Judgment on the Section 1985 issue.

## VI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

■ The plaintiff's final claim is a state law tort claim for intentional infliction of emotional distress. The defendants present two arguments alleging this final claim should be dismissed. First, the defendants suggest that the alleged conduct is, arguably, an unfair labor practice within the meaning of the Public Employees Relations Act, 43 P.S. § 1101.1201(a) (Purdon 1984 Supp.). In such cases, the Act vests exclusive jurisdiction with the Pennsylvania Labor Relations Board. However, the court agrees with the plaintiff that the mere fact that an employer commits an intentional tort does not render such act an unfair labor practice. In this case, the court will deny defendants' Motion for Summary Judgment based upon the Public Employees Relations Act.

■ The defendants' second argument is essentially that the conduct complained of is not "extreme and outrageous" as required under Pennsylvania law. Pennsylvania has adopted the definition of intentional infliction of emotional distress contained in the Restatment (Second) of Torts. Section 46 of the Restatement provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46 (1965 ed.). It is for the court to determine, in the first instance, whether the defendants' conduct is so extreme and outrageous as to

permit recovery. *See Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1274 (3d Cir.1979).

■ The defendants contend that merely changing Mr. Lynn's supervisor, headquarters and assignment, and suspending him for three days is not "atrocious" or "utterly intolerable in a civilized community." As the Restatement indicates, liability should not extend to mere "annoyance, petty oppressions or other trivialities." Restatement (Second) § 46 Comments (d). *See Chuy v. Philadelphia Eagles Football Club, supra.* Accordingly, the defendants suggest that the plaintiff's allegations, even if true, do not sustain this cause of action.

■ The court is reluctant, at this stage, to accept the conclusions reached by the defendants. The issues, as presented by the defendants, would not constitute extreme and outrageous conduct as defined by the Pennsylvania courts. However, plaintiff's contentions of persistent harassment and attempted coercion for filing union grievances, though generalized at this point, are of the type that a trier of fact might find do constitute extreme and outrageous conduct. Therefore, at this point of the proceedings, the court will deny the defendants' request for summary judgment on the intentional infliction of emotional distress issue.

## VII. IMMUNITY ISSUE

Finally, the defendants raise the defense of a qualified or good faith immunity from damages. The leading case in this area is *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court in *Harlow* formulated an objective standard to apply in determining the reasonableness of an official's conduct. The Court explained: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The Court further stated

that "the judge may appropriately determine, not only the current applicable law, but whether that law was clearly established at the time the action occurred." *Id.*

The defendants contend, that based upon the standard set forth in *Harlow,* they are entitled to a defense of immunity since Mr. Lynn's claims are not clearly established as a matter of law. For example, the defendants cite *Pickering, supra,* in support of their position regarding the First Amendment claim. The Supreme Court in *Pickering* refused to provide a general standard in determining whether a particular statement is or is not a matter of public concern. 391 U.S. at 563, 88 S.Ct. at 1731. Accordingly, the defendants suggest, the law was not "clearly established."

The plaintiff, however, alleges that the defendants "actually knew" that they were violating Mr. Lynn's rights by retaliating against him for filing grievances and that they then tried to conceal their true motive. Lynn supports this claim by referring to the depositions of District Attorney Preate and Assistant District Attorney Barrasse. The depositions, he suggests, indicate Mr. Preate "personally told both defendants that if they retaliated against Joe Lynn for filing grievances that this would constitute a civil rights violation.... The defendants made clear that they would say they were transferring Joe Lynn for the purpose of cross-training to avoid legal action." Plaintiff's Opposition Brief at 17, Document No. 32 of the Record.

■ Justice Brennan, in a concurring opinion in *Harlow,* addresses the issue of the public official who *actually knows* he was violating the law, regardless of whether he could reasonably be expected to know the consequences of his actions. In such a case, the "unusually well-informed violator of constitutional rights" will not escape liability based on the standard announced in *Harlow.* 457 U.S. at 821, 102 S.Ct. at 2740 (Brennan, J., concurring). The plaintiff asserts that this is precisely the situation presented here. Since the depositions, if believed, clearly indicate that defendants

were aware that retaliatory action taken against Mr. Lynn may be unconstitutional, the court will deny the defendants' request for a grant of immunity.

An appropriate Order will enter.