**COLUMBIA LOCAL, AMERICAN POSTAL WORKERS UNION, AFL–CIO, Appellees,**

v.

**William F. BOLGER, as Postmaster General of the United States Postal Service, Appellant.**

**No. 79–1273.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1980.

Decided May 9, 1980.

this opinion. *See Estelle v. Gamble*, 429 U.S. at 113, 97 S.Ct. at 295 (dissenting opinion).

Freddi Lipstein, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D. C. (John C. Oldenburg, U. S. Postal Service, Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Thomas E. Lydon, Jr., U. S. Atty., Columbia, S. C., Robert E. Kopp, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D. C., on brief), for appellant.

James L. Bell, Columbia, S. C. (Deborah Wright, Columbia, S. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, PHILLIPS, Circuit Judge and ROSZEL C. THOMSEN, United States District Judge for the District of Maryland, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge.

William F. Bolger, as Postmaster General of the United States Postal Service, appeals the entry of a preliminary injunction preventing the Postal Service from implementing certain changes at the Columbia, South Carolina Post Office pending arbitration. Because we conclude that federal injunctive relief was not necessary to protect the arbitral process that was available to resolve the underlying labor dispute in this case, we reverse and vacate the injunctive decree.

I

At the times in issue the Columbia Post Office handled both preferential mail—first class and air mail—and non-preferential mail—bulk rate and other low priority mail. In recent years, however, the Postal Service had been transferring the processing of non-preferential mail from local post offices to regional bulk mail centers. By the end of 1978, a substantial volume of the non-preferential mail had been transferred from Columbia to the bulk mail center in Greensboro, North Carolina, so that eight of the twenty-two employees in the second shift of the Columbia Post Office's non-preferential mail section were no longer needed.

Labor relations at the Columbia Post Office are governed both by a national collective bargaining agreement and by a local memorandum of understanding. The national agreement expressly authorizes such local memoranda of understanding so long as they do not vary the terms of the national agreement. In negotiating the local memorandum of understanding in late 1978, management proposed that the second shifts of the non-preferential and the preferential mail sections be merged. The Local opposed the merger, however, and

management desisted. Despite this, management shortly thereafter exercised its power under the national agreement "to hire, promote, transfer, assign and retain employees in positions within the Postal Service" to transfer the remaining employees in the non-preferential shift into newly created positions in other sections, while retaining the non-preferential shift on paper. This move was designed to allow the continued transfer of bulk mail operations to Greensboro and the transfer there of equipment used for bulk mail processing.

The Local filed a grievance under the mandatory grievance-arbitration provision in the national agreement and sought this injunction to halt the proposed management action pending the result of arbitration. In granting preliminary injunctive relief the district court applied a standard "balance of hardship" equitable analysis and found the balance to weigh in favor of the plaintiff. We believe that this mode of analysis failed properly to take into account special considerations controlling the exercise of federal judicial power in arbitrable labor disputes and resulted in an erroneous exercise of that power.

## II

■ The controlling principle is that where, as here, a collective bargaining agreement provides for mandatory grievance-arbitration procedures, the federal courts should not intrude at the behest of either management or labor into disputes over arbitrable issues unless intrusion by injunction is necessary to protect the arbitral process itself.

*Boys Markets, Inc. v. Retail Clerks Union Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), established that the federal courts could, in certain circumstances, enjoin strikes by unions over arbitrable issues. Strikes were the very tactic that arbitration was to obviate and a no-strike obligation, express or implied, was the union's *quid pro quo* for the employer's undertaking to submit contract disputes to binding arbitration. Unless an employer could have strikes over arbitrable issues enjoined,

arbitration as the method for resolving industrial disputes would be severely undermined. Injunction in these circumstances thus enforced a critical underpinning of the arbitral process.

*Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), made clear that *Boys Markets'* authority to enjoin was limited to injunctions to enforce the union's promise to arbitrate. The strike involved in *Buffalo Forge* was a sympathy strike, not a strike over an arbitrable issue, and indeed the very applicability of the no-strike obligation was an arbitrable issue. Thus the federal courts could not enjoin the strike without intruding impermissibly into the merits of the dispute. "The parties have agreed to submit to grievance procedures and arbitrate, not to litigate," the Court said. "They have not contracted for a judicial preview of the facts and the law." *Id.* at 411, 96 S.Ct. at 3149 (footnote omitted).

The *Boys Markets-Buffalo Forge* principle applies as well to the other side of the coin: to suits such as that in the instant case by unions seeking to enjoin actions by employers over which the union has filed grievance under a mandatory arbitration procedure. In *Amalgamated Transit Union, Division 1384 v. Greyhound Lines, Inc.*, 550 F.2d 1237 (9th Cir. 1977), the union sought to enjoin the employer from implementing changes in work schedules pending arbitration of the question. The court relied upon *Buffalo Forge* in denying the injunction. There was no express promise to maintain the status quo and none should be implied, the Court said. Arbitration would not be undermined by the changes proposed, because the arbitrator could restore the *status quo ante* by his award.

This court distinguished *Greyhound* in affirming the grant of a preliminary injunction in *Lever Brothers Co. v. International Chemical Workers Union Local 217*, 554 F.2d 115 (4th Cir. 1976). There the union sought to enjoin the relocation of a plant from Baltimore to Hammond, Indiana. Because the change proposed in *Lever Brothers* could not so easily be undone by the

arbitrator's award, *Greyhound* was inapposite:

> An injunction to preserve the *status quo* pending arbitration may be issued either against a company or against a union in an appropriate *Boys Markets* case where it is necessary to prevent conduct by the party enjoined from rendering the arbitral process a hollow formality in those instances where, as here, the arbitral award when rendered could not return the parties substantially to the *status quo ante.*

*Id.* at 123.[1]

### III

■ Under these authorities the appropriate test for issuance of injunction in the instant case is whether the conduct proposed must be enjoined because the available arbitral process could not possibly restore the *status quo ante* in an acceptable form were that conduct to be found violative of contract rights. This would render the arbitral process a hollow formality and necessitate injunction maintaining the *status quo* pending arbitration.

■ We think there is no sufficient showing here that the arbitrator could not, by his award, satisfactorily return the parties to the *status quo ante* if this were required by the arbitration result. The employees on the eliminated shift were not out of jobs, but reassigned within the Columbia Post Office. The district court found irreparable harm in those employees' loss of seniority. However, there is no showing that their jobs were less secure as the result of the loss of seniority involved. It appears instead that only rights regarding reporting time, days off, vacation time and other convenience factors were affected. We believe that any potential harm to the employees on the eliminated shift is more like that threatened by the change in work schedules in *Greyhound* than that inevitably resulting

from the plant closing in *Lever Brothers.* That there might be some measure of difficulty in devising appropriate compensatory relief for any employees found in the arbitral process to have been transferred in violation of the bargaining agreement does not make of the process a hollow formality. We conclude that under the principle of *Boys Markets* and its progeny, the parties here should have been left to their bargain to have their contract dispute resolved through arbitration without judicial intrusion.

*REVERSED AND VACATED.*

---

1. The Ninth Circuit originally affirmed the grant of an injunction in *Greyhound.* 529 F.2d 1073 (9th Cir. 1976). The Supreme Court, however, vacated and remanded for further consideration in light of *Buffalo Forge,* 429 U.S. 807, 97 S.Ct. 43, 50 L.Ed.2d 68 (1976). The second opinion in *Greyhound* was called to the attention of this court in a petition for rehearing after the initial decision in *Lever Brothers,* and discussed in an addendum to the opinion. The quoted material here is from the addendum.