**AUTOMOBILE MECHANICS LOCAL NO. 701, I. A. M. & A. W., AFL–CIO, Plaintiff,**

v.

**LARRY FAUL OLDSMOBILE, INC., etc., et al., Defendants.**

**No. 80 C 3815.**

United States District Court, N. D. Illinois, E. D.

Dec. 1, 1980.

David Mathews, Carmell & Charone, Ltd., Chicago, Ill., for plaintiff.

William H. Kelly, Jr., Thomas J. Russell, Mitchell, Russell & Kelly, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiff, Automobile Mechanics Local No. 701, is the collective bargaining representative of the nine former bodyshop employees of defendant Larry Faul Oldsmobile. Also named as a defendant is Larry Faul, doing business as Nan-Lar Auto Body. The complaint alleges that Larry Faul Olds

closed its bodyshop operations, terminating the employment of plaintiff's nine members, on May 9, 1980. The following Monday, May 12, Nan-Lar Auto Body, located a few hundred feet from Larry Faul Olds, commenced business. Nan-Lar is owned by the principal of Larry Faul Olds, Larry Faul; it utilizes all of the bodyshop equipment formerly utilized by Larry Faul Olds; and it assumed responsibility for all of the bodywork that had been in progress at Larry Faul Olds prior to the termination of that company's bodyshop operation. Finally, Nan-Lar employs seven of plaintiff's nine members. Nan-Lar refuses to submit itself to the terms of the collective bargaining agreement that had governed at Larry Faul Olds, and it is this refusal that is really at the heart of this lawsuit. The parties, however, have agreed to arbitrate this fundamental dispute, and the narrow question posed by this action is whether or not Nan-Lar and/or Larry Faul Olds should be ordered to continue making payments to the plaintiff's health and welfare fund under the former agreement during the pendency of the arbitration. Currently before the court is defendants' motion to dismiss.

Normally, the courts are barred from ordering injunctive relief in a labor dispute by the Norris-LaGuardia Act. 29 U.S.C. § 104. In *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), however, the Supreme Court recognized an exception to Norris-LaGuardia where an injunction issued to restrain a union from violating the no-strike and arbitration clauses in its collective bargaining agreement. The Court reasoned that Congress did not intend Norris-LaGuardia to interfere with the policy preferences it articulated elsewhere favoring arbitration resolutions to labor-management disputes. 398 U.S. at 249–253, 90 S.Ct. at 1591–94. In a subsequent decision, *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), the Court carefully circumscribed the *Boys Market* exception. There it was held that a no-strike clause could not be specifically enforced where the origins of the strike were unrelated to any matter subject to the collective bargaining agreement's arbitration clause. Put another way, *Buffalo Forge* established that labor injunctions are only proper where strictly necessary to support an arbitration provision.

Relying on the reasoning of these cases, several courts of appeals have, in recent years, considered the availability of injunctive relief for the purpose of preserving the status quo during the pendency of a collectively bargained arbitration. Normally, such injunctions are said to be permissible only when necessary to avoid reducing the arbitral process to a "hollow formality." The formulation of the Fourth Circuit in *Columbia Local, American Postal Workers Union v. Bolger*, 621 F.2d 615 (4th Cir. 1980), is typical:

> "The appropriate test for issuance of an injunction in the instant case is whether the conduct proposed must be enjoined because the available arbitral process could not possibly restore the status quo ante in an acceptable form were that conduct to be found violative of contract rights. This would render the arbitral process a hollow formality and necessitate [an] injunction maintaining the status quo pending arbitration." 621 F.2d at 618.

Thus, such injunctions have been approved where an employer was liquidating or transferring his operations in whole or part. *Drivers, Chauffeurs, Warehousemen, and Helpers Teamsters Local No. 71 v. Akers Motor Lines, Inc.*, 582 F.2d 1336 (4th Cir. 1978); *Lever Brothers Co. v. International Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir. 1976), but they have been denied where the employer's conduct merely affected scheduling or seniority rights. *Bolger, supra; Amalgamated Transit Union, Division 1384 v. Greyhound Lines, Inc.*, 550 F.2d 1237 (9th Cir. 1977), *cert. denied*, 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977).

Here the only injunctive relief sought would require continuing contributions to the Union's health and welfare fund. The availability of these contributions is, at most, a tangential issue in the

dispute currently being arbitrated. While it is probably true that the risk of catastrophic injury to a union member does make it possible that the arbitrator will be unable to restore the status quo ante precisely without the aid of the requested injunction, it does not follow from this that he will be unable to restore the status quo in an "acceptable form." In short, the integrity of the arbitral process will not be threatened if no injunction issues in this case. Since this is the only basis on which equitable relief may be granted by a federal district court in a labor dispute, it would appear that the complaint does not allege facts sufficient to justify the relief requested.

Moreover, even if this were not the case, and defendants' conduct did go to the heart of the pending arbitration, injunctive relief would not necessarily be appropriate. Plaintiff alleges irreparable injury arises from the risk that one of its members will suffer medical expenses that would be reimbursable were the defendants continuing their contributions to the health and welfare fund. While this eventuality may arise, there is no reason to think that the injured employee would be without a legal remedy. Thus, assuming it is determined that defendants' failure to make the requested contributions is a breach of an enforceable collective bargaining agreement, the court is hard put to see why the injured employee would be barred from filing a grievance to recover these costs or, if this issue is not arbitrable, why he would be barred from suing on this breach of contract and alleging his medical expenses as consequential damages.

Finally, the court must recognize that the Third Circuit has held squarely contrary to the decision handed down today. In *United States Steelworkers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273 (3d Cir. 1979), the court upheld a district judge's injunction requiring an employer to continue welfare fund contributions during the pendency of an arbitration proceeding. According to the Third Circuit:

"The critical issue facing the district court was whether breaches of the contractual agreement to arbitrate caused or threatened to cause irreparable injury to Union members." 598 F.2d at 1280.

In focusing solely on the possible irreparable injury to union members, it appears that the Third Circuit overlooked the requirement that some injury be shown to the arbitral process itself by the cessation of these payments. No such special showing has been made in this case, thereby compelling the conclusion that the Norris-LaGuardia Act bars this court's intervention in the dispute.

For all of the above reasons, defendants' motion to dismiss is granted, and the cause is ordered dismissed.