Port Authority of Allegheny County, Appellant *v.* Amalgamated Transit Union, Division 85, an Unincorporated Association, by James McCarthy, Trustee ad Litem, Appellee.

Argued May 4, 1981, before Judges BLATT, CRAIG and MacPHAIL, sitting as a panel of three.

*Jacques M. Wood*, with him *John F. Dugan, John P. Edgar*, and *Sidney Zonn, Berkman, Ruslander, Pohl, Lieber & Engel*, for appellant.

*Samuel J. Pasquarelli, Jubelirer, Pass & Intrieri*, P.C., for appellee.

OPINION BY JUDGE MACPHAIL, July 10, 1981:

The Port Authority of Allegheny County (PAT) appeals as of right from a preliminary injunction of the Court of Common Pleas of Allegheny County[1] that restrained PAT from implementing changes in the job classifications and the operation of its upholstery shop (Shop) pending a final arbitration decision.

This case is another in the continuing saga of conflicts between PAT and Division 85, Amalgamated Transit Union (Division 85). This appeal had its genesis in a labor dispute that arose when PAT unilaterally attempted to improve the operational efficiency of its Shop. PAT's plan included the elimination of the job classification of "Seat and Sign Repairmen," held at that time by seven employees, and the creation, in its place, of seven more specialized job classifications. Division 85 filed a grievance and requested arbitration to determine whether the elimination or modification of the job classification would violate the parties' Collective Bargaining Agreement (CBA). Although PAT agreed to submit the issue to arbitration, PAT advised Division 85 that its plan to

---

[1] This appeal was taken pursuant to Pa. R.A.P. 311 and Sections 702(a), and 762 and 5105(c) of the Judicial Code, *as amended*, 42 Pa. C. S. §§702(a), 762 and 5105(c).

restructure the Shop would be implemented immediately. On May 1, 1979, Division 85 filed a complaint in the Court of Common Pleas of Allegheny County seeking a "status quo" injunction against PAT pending resolution of the dispute through arbitration.

An evidentiary hearing was held on May 2, 1979. A preliminary injunction was issued on May 3, 1979, restraining PAT from implementing the proposed changes. The order further directed that the arbitration decision be rendered within thirty days[2] and that the order become effective upon payment of bond by Division 85. On the same day PAT appealed the order to this Court.

Subsequent to the appeal, the following events occurred. The matter was heard by the arbitrators on May 15, 1979. At the request of both parties, the thirty day time limitation was suspended in order to afford the arbitrators additional time to examine the complex issues and render their decision. An interim decision denying Division 85's grievance was issued by the arbitrators on August 11, 1979. A full opinion and award were issued on November 4, 1979, which held that PAT had not violated the CBA by unilaterally deciding to restructure the job classifications in the Shop.

In this appeal PAT asserts that the trial court abused its discretion when it issued a "status quo" injunction against one party to a CBA pending arbitration of the underlying labor dispute between the parties to that CBA. Division 85, however, asserts that we should dismiss this appeal because subsequent events have rendered the appeal moot. PAT counters that we should decide the merits of the appeal, even though the dispute is technically moot, because it is one of a recurring nature, capable of repeatedly re-

---

[2] At the time of the hearing, two of the three members of the board of arbitration had already been chosen.

quiring review, and involves an issue of important public interest.

In an earlier appeal involving these same parties and this same issue, this Court refused to apply the exception to the rule that a mooted issue will not be decided. *Port Authority of Allegheny County v. Division 85, Amalgamated Transit Union*, 45 Pa. Commonwealth Ct. 464, 405 A.2d 1022 (1979). In writing for the Court, in that case, the late President Judge Bowman stated that the unusual, if not unique, factual situation there present[3] did not "afford a solid foundation upon which to decide the merits of the . . . 'status quo' injunction in a mooted case." *Id.* at 467, 405 A.2d at 1024. He further added that the injunctive relief granted by the trial court had not become operative because neither party posted the bond required by the Court.

The facts in the instant case, however, are not so unusual. It is to be expected that PAT will make some management decisions during the life of a CBA that will be unfavorably received by Decision 85. Moreover, the authority of PAT to make unilateral management decisions is likely to be challenged repeatedly by Division 85 and also is likely to be subjected to applications for similar "status quo" injunctions. Although we agree with Division 85 that the instant appeal is moot, we nevertheless are persuaded to apply the exception to the rule that we should dismiss a case which is moot and shall consider the substantive merits of the issue.

Our scope of review of an appeal from a decree that grants a preliminary injunction is a limited one.

---

[3] In that case PAT initiated a management directive for a deviation in a passenger route. Division 85 then engaged in an illegal nine-day strike. PAT sought to enjoin the strike and Division 85 in turn sought a "status quo" injunction against PAT pending resolution of the underlying dispute through arbitration.

We are restricted to an examination of the record to ascertain if there were any apparently reasonable grounds to support the action of the court below. *Cohen v. A. M. Byers Co.*, 363 Pa. 618, 70 A.2d 837 (1950); *Port Authority of Allegheny County v. Division 85, Amalgamated Transit Union*, 34 Pa. Commonwealth Ct. 71, 383 A.2d 954 (1978).

In *Boys Markets v. Retail Clerks Union*, 398 U.S. 235 (1970), the United States Supreme Court adopted several principles for determining whether an injunction should be issued in a labor dispute.[4] Initially there must be a determination that the dispute was one that the parties are contractually bound to arbitrate. Once that question has been determined, the ordinary principles of equity are to be considered— whether breaches are occurring and will continue, whether breaches have been threatened and will be committed, whether there will be irreparable injury to the petitioner, and a balancing of the harm between the parties if an injunction is issued or is denied.

In the instant case, there was no dispute that the grievance was subject to mandatory arbitration under the CBA. PAT contends, however, that the trial court failed to find there would be irreparable harm to Division 85 if the injunction was not issued.

At the hearing Division 85 presented evidence that although only seven senior employees would be affect-

---

[4] In *Boys Market*, the injunction in question was one issued to enjoin a strike in breach of a no-strike obligation under a CBA. The United States Supreme Court in that case recognized the necessity of injunctive relief to protect the arbitral procedure. The same principles have also been applied in suits where unions are seeking a "status quo" injunction pending arbitration. *Amalgamated Transit Union Division 1384 v. Greyhound Lines, Inc.*, 550 F.2d 1237 (9th Cir. 1977) (injunction was denied because work schedules alone were affected by the proposed changes), and *Lever Brothers Co. v. International Chemical Workers Union Local 217*, 554 F.2d 115 (4th Cir. 1976) (injunction was granted because the change involved an interstate relocation of a plant).

ed initially by the proposed changes in the Shop, these displaced employees would then be able to participate in "bidding and bumping"[5] procedures that had the potential of affecting up to 600 employees in several locations.[6] Division 85 contended that if the arbitrators rule in its favor it would be impossible to return to the *status quo ante,* because numerous conditions of employment such as location, vacation and wages would be affected by the change. PAT, however, argued that accurate records would be kept for all the changes involved and, therefore, it would not be impossible to return to the original situation.

PAT further argues that unless it is *impossible* for the arbitrator to restore the *status quo ante,* an injunction to preserve the status quo should not be issued. PAT cites as authority *Columbia Local, American Postal Workers Union v. Bolger,* 621 F.2d 615 (4th Cir. 1980), where an injunction decree issued by the trial court was vacated because the arbitrator could, by his award, satisfactorily restore the *status quo ante.* While we note *Columbia Local* with interest, its holding is not binding on this Court.[7] Further, it is obvious to us that *Columbia Local* is factually distin-

---

[5] These procedures involve bidding by the employees for any vacant or newly created position. Selection among those who bid for a job is determined on a combination of seniority and qualification to perform the work. Bumping means that any bargaining unit members whose jobs are abolished can move into jobs held by employees with less seniority if the employees with seniority are qualified to perform the work.

In the instant case bidding had just begun for the seven new positions at the time the injunction was issued.

[6] The record was unclear as to the exact number of locations. The number ranged from 6-8 locations throughout the greater Pittsburgh area.

[7] There is a split of authority among the U. S. Circuit Courts of Appeal as to what constitutes irreparable harm sufficient to issue a "status quo" injunction. Most of the state courts utilize the traditional equity approach in public employer-employee cases. For an

guishable from the case now before us. In *Columbia Local* a restructuring of the handling of mail resulted in eight second shift employees being transferred to positions on the first shift. While the transfer affected the seniority rights and work schedules of those eight employees, no other employees were affected by this change. In the instant case, however, the displacement of seven employees has the potential of affecting up to 600 employees whose work location, time schedules, and pay would be subject to change. Further, Division 85 presented evidence that, if the unilateral changes were made, a work stoppage was threatened and imminent, notwithstanding that a stoppage would be violative of the CBA.[8]

It must be remembered also that the instant case involves a public employer and public employees. The Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301, requires that, in addition to protecting the rights of the public employee and the public employer, the rights of the public at large must be protected. 43 P.S. §1101. 101. It further requires that adequate means must be established for minimizing disputes and disruption of the rights of the public. *Id.* Courts of equity usually go further to give and withhold relief in the furtherance of public interest than they do when only private interests are involved. 42 Am. Jur. 2d *Injunctions* §24 (1969).

In his well reasoned opinion in the case sub judice Judge NARICK recognized that modern labor policy re-

---

analysis of the law in this area see Gallagher, *Injunctions Restraining Employers Pending Arbitration: Equity and Labor Policy*, 82 Dick. L. Rev. 487 (1978).

[8] Evidence was presented at the hearing that the members of Division 85 had participated on numerous other occasions in work stoppages over what was termed "minor" disputes. Division 85 classified the current dispute as major.

volves around the CBA and that the arbitral forum is the primary arena for settling labor disputes. Judge NARICK further recognized that only in "*clear, convincing* and *exceptional* circumstances" should a court issue a "status quo" injunction pending arbitration of the underlying dispute. (Emphasis in original). In determining whether an injunction would be appropriate, Judge NARICK found that PAT would suffer no substantial inconvenience if the changes were delayed for a *few weeks*. He further found that there was a real and imminent threat of a work stoppage and that a substantial number of employees and the public would suffer irreparable harm if an injunction was not issued. It is not clear from his opinion to what degree the chancellor was influenced in his decision by the union's threat of a work stoppage but we here state that the *threat* of an illegal strike in and of itself will not warrant the issuance of a status quo injunction; indeed, such a threat should not be even a consideration.[9]

However, our careful and thorough review of the record here convinces us that under the facts of the instant case, apart from the threat of an illegal strike, the trial court had reasonable grounds to grant the injunction, particularly in light of the facts that two of the three arbitrators had already been chosen and that the arbitrators had been directed to render their decision within 30 days. Although we may have decided otherwise, we cannot say that the trial court lacked reasonable grounds for its action.

We emphasize that our holding is a narrow one. We have found from the facts and circumstances pres-

---

[9] Illegal strikes can be enjoined by the courts and sanctions may also be imposed on unions for failure to use every reasonable means to end any illegal strike. *Bazor Express; Inc. v. International Brotherhood of Teamsters*, 520 F.2d 951 (3rd Cir. 1975), *cert. denied*, 424 U.S. 935 (1976).

ent in this case that the chancellor had some reasonable grounds which warranted the issuance of a status quo injunction. We do not here hold that every management directive which may result in a strike or which may affect employees or even the public generally *must* have its implementation judicially restrained until a board of arbitrators has acted to resolve the dispute. Rather, each case must be judged upon its own facts and the ordinary rules of equity must be applied to those facts. No general rule can be framed that will apply to every conceivable factual situation.

Order affirmed.

### ORDER

AND Now, this 10th day of July, 1981, the order of the Court of Common Pleas of Allegheny County, dated May 3, 1979 is affirmed, even though the issue raised by that order is moot.