**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1349

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO.
639,

Plaintiff – Appellee,

v.

AIRGAS, INCORPORATED,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Theodore D. Chuang, District Judge.  (8:17-cv-00577-TDC)

Argued:  December 6, 2017                          Decided:  March 13, 2018

Before GREGORY, Chief Judge, and WILKINSON and HARRIS, Circuit Judges.

Dismissed by published opinion.  Judge Harris wrote the majority opinion, in which
Chief Judge Gregory joined.  Judge Wilkinson wrote a dissenting opinion.

**ARGUED:**  Judd E. Stone, II, MORGAN LEWIS & BOCKIUS, LLP, Washington,
D.C., for Appellant.  Mark James Murphy, MOONEY, GREEN, SAINDON, MURPHY
& WELCH, P.C., Washington, D.C., for Appellee.  **ON BRIEF:**  Allyson N. Ho,
MORGAN, LEWIS & BOCKIUS, LLP, Dallas, Texas, for Appellant.  Matthew D.
Watts, MOONEY, GREEN, SAINDON, MURPHY & WELCH, P.C., Washington, D.C.,
for Appellee.

PAMELA HARRIS, Circuit Judge:

Airgas, Inc., a national company that produces gases for industrial and medical uses, operates a facility in Hyattsville, Maryland, where its approximately 65 employees are represented by an International Brotherhood of Teamsters union. When Airgas announced plans to relocate some of its Hyattsville operations to nonunionized facilities, the Union objected, arguing that the move was barred by the parties' collective bargaining agreement, and initiated the mandatory arbitration provided for by the agreement. And at the Union's urging, the district court entered a preliminary injunction prohibiting the contemplated transfer pending arbitration, to ensure that the *status quo ante* could be restored were the Union to prevail on the merits of the contract dispute.

Airgas appealed, asking that we vacate the injunction and allow it to proceed with its planned relocation during the arbitration. While Airgas's appeal was pending, however, the arbitrator issued a final decision in favor of the Union, the arbitration concluded, and the preliminary injunction expired by its own terms. Because Airgas no longer has a legally cognizable interest in the validity of the preliminary injunction, we follow our recent practice, *see International Union, UMWA v. CONSOL Energy, Inc.*, No. 17-1378 (4th Cir. Nov. 27, 2017), ECF No. 42, and dismiss this appeal as moot.

## I.

In February 2017, Airgas notified the Union that represents its Hyattsville, Maryland employees that it intended to "completely shut down" and move two of its Hyattsville operations to two nonunionized locations, one in Maryland and one in

2

Pennsylvania, by the next month. J.A. 71. The vacated Hyattsville space would be converted into specialized storage facilities for nitrous oxide and various chemicals, as required to bring Airgas's practices into compliance with Food and Drug Administration and Department of Homeland Security regulations regarding chemical storage. The parties agree that the transfer would mean the loss of an estimated 13 Union positions at the Hyattsville facility, reducing the bargaining unit's size by about twenty percent.

The Union objected on the ground that the proposed relocation would violate Article 10 of the parties' collective bargaining agreement ("CBA"), which provides that Airgas "shall not subcontract, transfer, lease[,] assign[] or convey[] in whole or in part, directly or indirectly, any work or service . . . presently performed or hereafter assigned to the collective bargaining unit." J.A. 29. Airgas disagreed, pointing to Article 9, which reserves to Airgas the right to manage its business as it sees fit "except as specifically limited" by the CBA, and in particular, to "[s]ell, lease, transfer, move, change location, discontinue, [and] relocate all or part of the business or operations." J.A. 26–28. Airgas also informed the Union that it had started the process of hiring nonunion employees to perform the transferred work operations at one of its new locations.

As the parties agree, their dispute is subject to mandatory arbitration under the CBA. When Airgas declined to expedite arbitration, the Union moved in the district court for a preliminary injunction barring the proposed relocation pending arbitration. Federal courts generally are without jurisdiction to issue injunctions in labor disputes, *see* 29 U.S.C. § 101, but the Union invoked the exception recognized in *Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235 (1970) and *Lever Brothers Co. v.*

3

*International Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir. 1976), which allows for injunctions during arbitration if an arbitrator otherwise would be unable to restore the *status quo ante* after deciding the merits of a labor dispute. According to the Union, this was precisely such a case: Once Airgas moved several large pieces of equipment from the Hyattsville facility to new locations, converted the vacated Hyattsville space into designated chemical storage, and replaced 13 terminated Union members with nonunion employees – five of whom, it turned out, already had been hired – it would be too late for an arbitrator to unwind the transfer if the Union prevailed on the merits. Airgas disagreed, insisting that it could and would undo the transfer promptly and with ease were the arbitrator to rule against it.

After holding a hearing, the district court agreed with the Union and issued a preliminary injunction barring the proposed transfer pending arbitration. *See International Brotherhood of Teamsters, Local Union No. 639 v. Airgas, Inc.*, 239 F. Supp. 3d 906 (D. Md. 2017). The court recognized the "jurisdictional limitations deriving from the Norris-LaGuardia Act" that generally leave federal courts without jurisdiction to enter injunctions in labor disputes. *Id.* at 912. But under *Boys Markets* and settled circuit precedent, the court explained, "special considerations" will permit a preliminary injunction pending arbitration: When the parties' dispute is subject to mandatory arbitration under a collective bargaining agreement, a court retains jurisdiction to enter a preliminary injunction barring proposed employer conduct where "necessary to protect the arbitral process itself," by ensuring that the arbitrator will be able to "restore the *status quo ante* in an acceptable form were that conduct found to be violative of

4

contract rights." *Id.* at 912–13 (quoting *Columbia Local, American Postal Workers Union v. Bolger*, 621 F.2d 615, 617–18 (4th Cir. 1980)).

Because Airgas conceded that the parties' dispute was subject to arbitration under the CBA, the district court turned to the factual question of whether Airgas's planned relocation could, "as a practical matter, be fully unwound" were the arbitrator to rule against it. *Id.* at 913. The court noted that our circuit has upheld *Boys Markets status quo* injunctions in cases that involve the planned relocation of company operations rather than more easily rectified changes in work shifts or schedules. *Id.* at 913–14 (citing *Bolger*, 621 F.2d at 616–18; *Drivers, Chauffeurs, Warehousemen & Helpers Teamsters Local Union No. 71 v. Akers Motor Lines, Inc.*, 582 F.2d 1336, 1338–39, 1341 (4th Cir. 1978); *Lever Bros.*, 554 F.2d at 122). In this case, too, the district court determined, the evidence and testimony established that "it is not realistic to conclude that Airgas could simply undo" the contemplated move in the event of an unfavorable ruling by the arbitrator. *Id.* at 914. That was so, the district court found, because of a combination of circumstances: The move would require the physical relocation of large pieces of equipment from Hyattsville to the alternate sites; it would be accompanied by the repurposing of the Hyattsville space as designated chemical storage, as required by federal regulations; and Airgas already had started to replace Hyattsville workers with newly hired nonunion employees. *Id.* at 914–15. All told, Airgas's transfer of operations, if allowed to commence, almost certainly would become so "strongly rooted" during the year or so devoted to arbitration that it would be infeasible for an arbitrator to return the parties to the *status quo ante*. *Id.* at 915.

5

Having satisfied itself of jurisdiction to enter a preliminary injunction under *Boys Markets*, the district court went on to consider the traditional preliminary injunction factors. *See Boys Markets*, 398 U.S. at 254 (instructing courts to consider whether issuance of injunction would be "warranted under ordinary principles of equity"). As to likelihood of success on the merits, the court explained, because the merits of the contract dispute are reserved to the arbitrator, the relevant inquiry is limited to whether the parties' dispute is subject to arbitration – a point conceded by Airgas. *Airgas, Inc.*, 239 F. Supp. 3d at 916 (citing *Akers*, 582 F.2d at 1342). The other factors – irreparable harm, the balance of the equities, and the public interest – also supported issuance of an injunction, the district court found. *Id.* at 916–17.

The district court thus granted the Union's motion for a preliminary injunction, ordering Airgas to "maintain the *status quo* in this matter until issuance of a final and binding arbitration award." *Id.* at 917. Specifically, the court enjoined Airgas from relocating functions from its Hyattsville location to other facilities, "including relocating . . . equipment or materials," and from making "reductions in or alterations to staffing" in the relevant Hyattsville operations. *Id.*

Airgas timely appealed, arguing principally that the district court lacked jurisdiction to enter an injunction, and also that the district court abused its discretion under the traditional equitable factors governing preliminary injunctive relief. Airgas asked this court to reverse the district court and vacate the preliminary injunction, allowing it to effectuate its planned transfer of operations without waiting for arbitration to conclude.

6

On January 5, 2018, while Airgas's appeal was pending, the arbitrator ruled on the merits of the parties' contract dispute, finding for the Union. Airgas's proposed transfer of operations, the arbitrator held, would violate the plain language of Article 10 of the parties' CBA. The arbitrator thus permanently enjoined the planned relocation, ordering Airgas to cease and desist from the transfer of operations from its Hyattsville facility.

## II.

Before we may address the propriety of the district court's preliminary injunction, we must consider whether the end of arbitration renders moot Airgas's appeal of a preliminary injunction that freezes the *status quo* while arbitration proceeds. "The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction, which extends only to actual cases or controversies." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (internal quotation marks and alteration omitted). Because "the federal courts 'are without power to decide questions that cannot affect the rights of litigants in the case before them,'" the "parties' stake in the outcome of [a] case must exist not only at the case's inception, but for the entire duration of the proceedings." *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 474 (4th Cir. 2015) (quoting *DeFunis v. Odengaard*, 416 U.S. 312, 316 (1974)). If an event occurs during the pendency of an appeal that makes it impossible for a court to grant effective relief to a prevailing party, then the appeal must be dismissed as moot. *Williams v. Ozmint*, 716 F.3d 801, 808–09 (4th Cir. 2013).

We very recently applied those principles to dismiss as moot an employer appeal from a *Boys Markets* preliminary injunction in a posture on all fours with the one we face today: A district court preliminarily enjoined a planned employer action pending arbitration; the employer appealed; and while the appeal was pending, the arbitrator ruled for the union on the merits of the underlying contract dispute. *See International Union, UMWA v. CONSOL Energy, Inc.*, No. 17-1378 (4th Cir. Nov. 27, 2017), ECF No. 42 (dismissing appeal as moot). We are not necessarily bound to follow that decision, which was issued without published opinion or explanation. Nor, however, should we depart from it without some good reason, if only to avoid any misimpression that we are picking and choosing which cases we would like to decide. *Cf. Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007) (cautioning that case or controversy requirement "may not be ignored for convenience's sake"). No such reason presents itself here.

It is clear enough that we no longer can grant Airgas the relief it originally sought: vacatur of the district court's preliminary injunction, allowing it to implement its planned relocation before the arbitrator's resolution of its contract dispute with the Union. That period of time has come and gone; it is not now possible for Airgas to execute its move during the pendency of arbitration. And the preliminary injunction to which Airgas objects has expired by its own terms. *See Airgas, Inc.*, 239 F. Supp. 3d at 917 (ordering Airgas to "maintain the *status quo* in this matter *until issuance of a final and binding arbitration award*") (emphasis added). The issue presented by Airgas is "no longer 'live,'" which means that we do not have a justiciable controversy in front of us. *See Williams*, 716 F.3d at 809 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

Airgas now argues, however, that even if it is too late for us to award the relief it originally sought, the possibility that it could obtain damages and attorney's fees were we to rule in its favor is enough to keep this case alive. In other words, if the district court lacked jurisdiction to enter the *Boys Markets* preliminary injunction, then, Airgas says, it would be entitled to damages for the period between that injunction and the arbitrator's award, during which it should have been – but was not – permitted to go ahead with its planned relocation. We cannot agree.

In most cases, an appeal from the grant of a preliminary injunction will become moot when a permanent injunction is entered, "because the former merges into the latter." *See Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 314–15 (1999). Airgas is correct, however, that this is not always so. Sometimes a final adjudication turns on legal issues different than those posed by a preliminary injunction, so that the final decision does not establish the validity of the earlier injunction. As a result, mootness is avoided, because it remains possible that if the preliminary injunction was improper, the party against whom it operated would be entitled to damages for the period during which it was restrained. *Id.* at 315–18. Airgas invokes that rule here: The final adjudication – the arbitrator's decision on the merits of the parties' contract dispute – has no bearing on whether the district court had jurisdiction to enter a *Boys Markets* preliminary injunction, and so the arbitrator's decision in favor of the Union does not establish that the Union was entitled to prevail at the preliminary injunction stage.

So far, so good. But there is a critical problem with Airgas's argument: What the arbitrator's final decision indisputably *does* establish is that regardless of the validity of

9

the preliminary injunction, Airgas is not entitled to damages. As it turns out, there was no period of time during which Airgas should have been permitted to relocate its operations to nonunion facilities but was restrained from doing so, improperly or otherwise; according to the arbitrator, who has the final word, the CBA precluded such a move from day one. A party may recover damages for a preliminary injunction wrongfully entered if and only if the injunction prevented it from doing something that it had the legal right to do. *See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990) (damages available if improperly entered preliminary injunction stopped party from taking action it "had at all times the right to do"); *see also Glob. NAPs, Inc. v. Verizon New Eng., Inc.*, 489 F.3d 13, 22 (1st Cir. 2007); *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1059 (8th Cir. 2006); *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994). Here, as a result of the arbitrator's final decision, it is established that Airgas did not have the legal right to relocate its Hyattsville operations as planned, so there are no damages to recover.

This posture distinguishes our case from *Grupo Mexicano*, in which no finding had been made "either in the preliminary injunction order or in the final order" that the conduct enjoined was unlawful under the parties' agreement. 527 U.S. at 315 n.2. It followed that were the Supreme Court to reverse the preliminary injunction, the defendant would have the opportunity to establish that it had been enjoined from taking action it "had a right all along to do." *See Glob. NAPs*, 489 F.3d at 22–23. In this case, by contrast, the final adjudication under the CBA forecloses that position. So "even if the preliminary injunction was wrongly issued" by the district court, "its issuance [was] in

10

any event [] harmless error," because the "final injunction establishes that the defendant *should not have been engaging in the conduct that was enjoined*." *Grupo Mexicano*, 527 U.S. at 314–15 (explaining that an appeal of a preliminary injunction is moot in such circumstances).

It makes no difference to this analysis that the district court, when it entered the preliminary injunction, ordered the Union to post a $5,000 bond "to compensate Airgas should it successfully establish that the preliminary injunction should not have issued, and that they wrongfully sustained damages as a result of this injunction." *Airgas, Inc.*, 239 F. Supp. 3d at 917. As the terms of the bond make clear, Airgas has no automatic entitlement to damages of $5,000 on a finding that the district court lacked jurisdiction to enter a *Boys Markets* preliminary injunction; instead, Airgas can recover only if it also can establish damages, which, as we have just explained, it cannot. *Cf. First-Citizens Bank & Tr. Co. v. Camp*, 432 F.2d 481, 485 (4th Cir. 1970) (remanding to district court for "hearing as to damages sustained by [the enjoined party] by reason of the improvident issuance of the injunction order and for the award of such damages within the limits of the $5,000 bond"). And without the possibility of damages, it is well established that the remaining interests asserted by Airgas – attorney's fees and costs – are "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (interest in recovering "sunk costs" and fee-shifting insufficient to create case or controversy).

Finally, we note that the exception to mootness doctrine for cases "capable of repetition, yet evading review," *see Spencer v. Kemna*, 523 U.S. 1, 17 (1998), does not

11

apply. Indeed, Airgas has not invoked that exception, and for good reason. Our case law, and the law in circuits around the country, is replete with instances – many cited by Airgas and the Union in their briefs – in which appellate courts have been able to resolve appeals of *Boys Markets* injunctions before arbitration concludes. *See, e.g.*, *Bolger*, 621 F.2d at 618 (vacating improperly entered *Boys Markets* injunction before ruling by arbitrator); *Akers*, 582 F.2d at 1343 (affirming issuance of *Boys Markets* injunction before ruling by arbitrator). And in any event, as we have explained, even when an arbitrator does issue a decision before the appellate process is complete, the case will remain justiciable if the arbitrator decides in favor of the employer, establishing that it "had a right all along" to take the action enjoined and giving rise to a claim for damages. The "capable of repetition yet evading review" exception is a narrow one, reserved for "exceptional" circumstances. *See Williams*, 716 F.3d at 809–10 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). Because *Boys Markets* appeals regularly may be resolved during the course of a still-live dispute, there is no occasion to invoke it here.[*]

---

[*] Provoked by what he views as a clear case of judicial overreach, our dissenting colleague is prepared to stretch the narrow "capable of repetition yet evading review" exception until it can accommodate this case. We see no need to strain for that result. Whatever the dissent's misgivings about *Boys Markets* and its progeny, those cases constitute settled precedent. And while labor disputes may be ideologically charged, nothing in the district court's carefully reasoned opinion suggests that it was anything but evenhanded in applying that precedent to the facts of this case.

## III.

For the foregoing reasons, the appeal is dismissed as moot.

*DISMISSED*

WILKINSON, Circuit Judge, dissenting:

In no uncertain terms, Congress withdrew from our jurisdiction the authority to enjoin ordinary labor disputes. Yet here we are. The parties before us signed a collective bargaining agreement, which provides for the exclusive resolution of disputes through arbitration without any mention of prior judicial involvement. And yet here we are. In seeking to uphold the preliminary injunction issued by the district court, appellee imbibes to the point where meaning mutates—where "never" means "sometimes" and "arbitrate" means "litigate." I think the trial court's injunction wholly improper, wholly bereft of any statutory or contractual basis, and wholly alien to the efficiencies arbitration is supposed to represent.

Binding arbitration is a step forward from an earlier period of industrial strife. That period featured unpredictable strikes, which disrupted the means of production, and ham-handed management responses, which left lasting resentments in the workforce. Binding arbitration in collective bargaining agreements works to ameliorate these problems. *See Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 417–18 (1981) ("Unions agree to . . . no-strike clauses in exchange for the employer's promise to arbitrate disputes arising in contract administration.") (Powell, J., concurring). This arrangement has not brought about perfect harmony in labor-management relations because nothing could do that. What it has done is impart to the resolution of industrial disputes a measure of much-needed regular order. Sadly, the majority's disruption of the arbitral process with injunctions of the sort before us will set back this progress and redound eventually to the detriment of labor and management alike.

I.

Faced with a plainly erroneous injunction, the majority not surprisingly heads for the nearest off-ramp: It holds that an arbitral award in favor of the union has mooted this appeal. Even with its mootness holding, however, the majority cannot resist tipping its hand on the merits, praising the district court's "carefully reasoned" and "evenhanded" opinion in a manner that encourages similar pre-arbitral injunctions of future labor disputes. Maj. Op. at 12.

In all events, the matter is not moot. When it issued the preliminary injunction, the district court required the union to post a $5,000 injunction bond. J.A. 152. As the Supreme Court has explained, even where a party has already lost on the merits, a ruling "that the District Court was without power to issue the preliminary injunction" will give rise to "a claim against the injunction bond" under Federal Rules of Civil Procedure 65(c) and 65.1. *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 313–14 (1999). This "potential cause of action against the injunction bond preserves our jurisdiction over this appeal." *Id*. at 314. It is a live controversy on which the arbitral award simply has no bearing.

The majority suggests that any claim against the bond would be futile because Airgas could not have been damaged by being enjoined from doing something the arbitrator now says it had no legal right to do. *See* Maj. Op. at 11. But that elides the injunction and the arbitral award. Although a party cannot recover damages for being barred from doing something unlawful, the majority ignores the fact that the injunction in

15

this case was materially broader than the arbitrator's decision. It likely restricted perfectly lawful conduct.

The arbitral award covered only Airgas's "plan to transfer [two specific] functions from its Hyattsville facility to its Montgomeryville and its Linthicum Heights facilities." FMCS No. 170224-53328-1 at 23. The injunction, however, restricted not only the relocation of "functions," but also the relocation of all "equipment or materials" and prohibited Airgas from "[m]aking any reductions in or alterations to staffing" in the relevant portions of its business. J.A. 134. Airgas could well argue, for example, that it was damaged by an inability to hire additional workers or replace outdated equipment despite full compliance with the eventual arbitral result. Given the disjunction between the broad injunction and the much narrower arbitral award, it is altogether premature to call this case moot.

In its eagerness to escape the merits, the majority too hastily rejects another reason the case is not moot: It is capable of repetition yet evading review. While not every appeal of a labor injunction will be mooted by an arbitral award, *see* Maj. Op. at 12, many can be and will be. The Supreme Court has not required outright impossibility of review in order for a category of cases to satisfy this doctrine. If that were the standard, only a handful would ever qualify. Rather, the doctrine requires that "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). The challenged action here was in fact "too short to be fully litigated" prior to arbitration, and as the majority

16

indicates, one need not go far back in our records to find another incident of the same nature. *See Int'l Union, UMWA v. CONSOL Energy, Inc.*, No. 17-1378 (4th Cir. Nov. 27, 2017). And Airgas surely anticipates that in its manifold business operations it will be "subject to the same action again," or why else would it pursue the issue in this case? Simply put, the capable-of-repetition doctrine is not as demanding as the majority suggests, and the Supreme Court has employed it with some regularity, including in the labor injunction context. *See, e.g.*, *Burlington N. R. Co. v. Bhd. of Maint. of Way Employees*, 481 U.S. 429, 436 (1987). I see no reason not to invoke it now.

What we have here bears all the hallmarks of a scam. A district court enjoins a company from doing this or that pending arbitration. Before the lumbering appellate process can weigh in, the arbitrator issues an award. Presto, the case is moot, and there is no way the court of appeals, much less the Supreme Court, can undertake review.

Appellee's effort to shield the trial court's decision from review is, to say the least, unseemly. Of course, a company can always seek a stay of any injunction. But requiring a party not only to litigate the "likelihood of success on the merits" before the trial court, *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), but also to request an appellate stay, is to immerse it in the very litigation it had bargained to avoid. If nothing else, Airgas should be able to seek costs and fees for being forced to expend funds on a process expressly forbidden by the collective bargaining agreement. After all, the whole attractiveness of arbitration as an *alternative* dispute resolution mechanism is that it will avoid the encumbrances associated with litigation. In its suggestion of mootness, appellee is doing its best to mire future collective bargaining agreements in litigation, and render

17

not only unreviewable but less worthy the very arbitral process that the injunction, with unwitting irony, professes to "protect." *See Int'l Bhd. of Teamsters, Local Union No. 639 v. Airgas, Inc.*, 239 F. Supp. 3d 906, 913 (D. Md. 2017). Supplementing arbitration with this sort of antecedent litigation is no way to bring about industrial peace.

## II.

The district court lacked jurisdiction to issue an injunction in this case. In holding otherwise, the trial court treated congressionally imposed limits on its jurisdiction as mere suggestions to be ignored whenever courts see fit, and effectively installed itself as acting CEO of a private company. Such judicial overreach betrays our most basic constitutional constraints.

It is elementary that the jurisdiction of federal district and circuit courts is within Congress's discretion. Article III provides that the "[t]he judicial power of the United States, shall be vested . . . in such inferior courts as the Congress may from time to time ordain and establish." U.S. Con. Art. III § 1. And as the Supreme Court long ago explained, "Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies." *Sheldon v. Sill*, 49 U.S. 441, 449 (1850).

In 1932, Congress did just that with respect to labor injunctions. The Norris-LaGuardia Act provides that "No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter." 29 U.S.C. § 101.

18

The legislation's premise was simple. Labor and management should be able to settle their differences in the interest of industrial peace, and should be free to do so without courts getting in the way. Then, as now, Congress quite distrusted judicial interference in this area. *See, e.g.*, 75 Cong. Rec. 4505 (1932) (explaining how federal courts had engaged in "abuse of the power of injunction"); *id.* at 4510 ("It is because we have now on the bench some judges—and undoubtedly we will have others—who lack that judicial poise necessary in passing upon the disputes between labor and capital that such a law is proposed."). Judicial predilections surface too often in labor-management disputes. At different times, Congress has been more concerned about courts favoring companies or favoring unions. But the neutral principle of Norris-LaGuardia remains constant: the federal courts have no business enjoining ordinary labor disputes.

In *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, the Supreme Court created a "narrow" exception, only where absolutely necessary to protect arbitration, to the general prohibition against enjoining labor disputes. 398 U.S. 235, 253 (1970). While that opinion purported to limit its holding to the precise circumstances before it, *id.* at 253-54, later decisions expanded the principle, *see, e.g., Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368 (1974). So-called "*Boys Markets* injunctions" in favor of management and "reverse *Boys Markets* injunctions" in favor of unions became a widely recognized, if textually dubious, practice in the federal courts. *See, e.g., Lever Bros. Co. v. International Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir. 1976).

The exception to Norris-LaGuardia carved out in *Boys Markets* and its progeny did not derive from any statutory text. The Supreme Court did not even assert as much in its original opinion. Of course, "Boys Markets and its progeny . . . constitute settled precedent." Maj. Op. at 12. But it is anything but settled that these injunctions would, as the majority would have it, become not the exception, but the rule. If courts must, consistent with Supreme Court precedent, take the highly unusual step of finding jurisdiction where Congress has said there is none, they may do so only in the narrowest of circumstances. That is why this court has said that jurisdiction exists only where the absence of an injunction would "render the arbitral process a hollow formality," *Columbia Local, Am. Postal Workers Union, AFL-CIO v. Bolger*, 621 F.2d 615, 618 (4th Cir. 1980), or a "futile endeavor," *Lever Bros.*, 554 F.2d at 118.

There was no showing here that failure to issue an injunction would "render the arbitral process a hollow formality" or a "futile endeavor." *Id*. The district court found no infirmity in the collective bargaining process. No breakdown in the arbitral process. No unwillingness on Airgas's part to comply with an arbitral award. No threat to industrial peace. This case merely involved a relatively minor relocation of work for business efficiencies and regulatory compliance. Besides the conclusory assertions of the union, the district court had no evidence that arbitration would have failed to render an adequate remedy or that management would have failed to abide by an adverse arbitral decision.

Airgas did not propose to close its plant, sell off its equipment, or liquidate parts of its business. *See Lever Bros.*, 554 F.2d at 117-18 (plant closure); *Local Lodge No. 1266, Int'l Ass'n of Mach. & Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 285-

20

86 (7th Cir. 1981) (asset sales); *Drivers, Chauffeurs, Warehousemen & Helpers Teamsters Local Union No. 71 v. Akers Motor Lines, Inc.*, 582 F.2d 1336, 1341 (4th Cir. 1978) (business liquidation). It merely proposed to move some equipment that could be put back, and lay off several employees who could be compensated with reinstatement and/or back pay.

Specifically, Airgas planned to relocate two work segments from its Hyattsville, Maryland facility to nearby operations. Under the proposal, a High Pressure Retesting and Liquid Can Repair segment would move to Airgas's facility in Montgomeryville, Pennsylvania, and a Small Medical Oxygen segment would go up the road to Linthicum Heights, Maryland. The first move would have lowered costs, and the second would have allowed the company to achieve compliance with Department of Homeland Security regulations governing the storage of nitrous oxide gas by creating room for a storage facility in Hyattsville. To achieve these goals, Airgas planned to lay off two Hyattsville employees and transfer some heavy equipment by truck. All told, these changes would affect only one fifth of the work at the Hyattsville facility.

These routine business decisions might be inconvenient to undo. But there is not a scintilla of evidence that they would be irreversible.[*] Rather, they were well within Airgas's prerogative to run its business as it saw fit during the pendency of arbitration.

---

[*] For similar reasons, an injunction was inappropriate even assuming that the district court had jurisdiction to issue one. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def.* (Continued)

A company is entitled to realize efficiencies and manage its business until an arbitral order compels it to do otherwise. If a company cannot even convert its workspace to comply with federal safety regulations, or shift a small part of the work at one facility to another, what can it do? If these modest steps are to be enjoined during the pendency of arbitration, then the company has been divested, in violation of a statute and in the absence of any contractual prohibition, of the very right to run its business. The parties can, of course, agree among themselves to maintain the status quo during arbitration. And if a company does not, it runs the decided risk that it will eventually be found by the arbitrator to have violated the collective bargaining agreement with its attendant consequences. But these are decisions first for the parties, next for the arbitrator, and lastly, if at all, for the courts.

## III.

It was bad enough for the trial court to flout Congress's clear denial of jurisdiction, but its transgressions did not end there. By issuing an injunction in this case, the court effectively jettisoned the parties' collective bargaining agreement and rewrote it from the bench. The parties bargained for arbitration. They got litigation. They bargained for an arbitrator. They got a federal judge.

Airgas and Local 639 negotiated and signed a contract with a highly detailed, binding dispute resolution provision. Article 18 of the collective bargaining agreement is

---

*Council, Inc.*, 555 U.S. 7, 20 (2008). Because the normal course of arbitration could have given the union an adequate remedy, there was not a likelihood of irreparable harm here.

unequivocal: "The grievance and arbitration procedure above set forth shall be the *sole and exclusive* means for the determination of *all* disputes, complaints, controversies, claims or grievances *whatsoever* arising pursuant to the terms and conditions of this Agreement." J.A. 40 (emphasis added). In the event of a conflict, the parties agreed that the union would file a grievance within 15 days; the two sides would meet to try to resolve their differences; and, failing that, the parties would submit the grievance to arbitration. Article 18 also provides for numerous deadlines, methods for selecting a mutually acceptable arbitrator, and arbitral procedures. The trial court did not point to a single word in this meticulous document that so much as contemplates a stay pending arbitration or a procedure to "facilitate" the agreed-upon process. Indeed, it would be difficult to expedite arbitration without abandoning Article 18's elaborated scheme. After all, the parties agreed to not just any arbitration, but to the precise "procedure above set forth." J.A. 40.

Until a federal court injected itself as a third party to the contract, the dispute resolution process laid out in the collective bargaining agreement was scrupulously followed. Local 639 complains that Airgas declined to halt the challenged relocation or submit to expedited arbitration. But the union did not negotiate for a collective bargaining agreement that required those things. Such terms are wholly absent from this agreement because the parties chose not to include them. To insert them judicially is an absolute gift to one party to the contract. Courts may consider their judgments in these cases Solomonic. But it is contractual agreements, not regal wisdom, around which private parties ought to be able to order their affairs.

23

## IV.

The trial court's extra-statutory and extra-contractual adventure comes at a serious cost. By gratuitously involving itself in questions of what an arbitrator might decide on the merits, or which remedies an arbitrator might approve, the district court skewed the very process Norris-LaGuardia and the collective bargaining agreement sought to protect. And by derogating the parties' negotiated dispute resolution process, it injected doubt and uncertainty into collective bargaining generally. Injunctions are tricky business. Properly utilized, they are vital bulwarks against violations of law. Improperly imposed, they allow equitable judicial discretion to curtail the liberty that it is our right under law to enjoy. This whole enterprise invites ideological mischief. Time and again, the federal courts have proved ill-suited for enjoining industrial disputes. That is the legislative judgment reflected in the Norris-LaGuardia Act, and the judgment that the district court refused to respect. I cannot endorse its action or the destabilization of collective bargaining that will follow from it. I would reverse the judgment.